People of the State of Illinois, Defendant in Error v.
George Lagios, Plaintiff in Error.

Gen. No. 49,480.

First District, Third Division.
July 27, 1964.
Rehearing denied September 11, 1964.

Robert W. Heinze, Harold H. Winer and Sterling S. Suga, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and William J. Nellis, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The defendant, George Lagios, was indicted for robbery, tried by the court without a jury, found guilty and sentenced to the penitentiary for a term not less than five years nor more than ten years. He brings this writ of error to review his conviction, contending that the State's evidence was not sufficient to support a finding of guilty.

James Miho, the complaining witness, worked as a dishwasher at Don the Beachcomber, a restaurant on the near north side of Chicago. He testified that he left work at 2:00 a. m. on Monday, July 30, 1962, and that after having been paid by his employer, he had $285 in cash, which money he needed because he was going on a vacation the next day. When he finished his work he went to the Charlie Brown tavern near the corner of Clark and Division streets, where he had two highballs. He testified that as he left the tavern he was struck from behind and knocked down. He jumped up and fought back, but his assailant ripped open his pants pocket, took his money and ran into an alley in the middle of the block. Miho yelled, "I have been robbed," and he and two high school boys, who had witnessed the incident, gave chase. A policeman, Edward Kroke, saw the defendant

441

emerge from the same alley onto Elm Street, run east to Clark Street and south on Clark. Officer Kroke followed him in his police car and stopped him at the corner of Clark and Maple. The defendant told the policeman that three men were chasing him. When Miho and the two boys came running toward them and one of the boys yelled, "Hold that man, he just jackrolled somebody on Division Street," the defendant again took flight and ran back towards the same alley out of which he had just come. The policeman then pursued and apprehended him. Lagios was identified by Miho as the man who robbed him and by the two boys as the man who was fighting with Miho outside the tavern. When the defendant was searched, $269 was found in his pockets.

Lagios testified that on the night of the robbery his wife gave him $250 to purchase a car and that he had $30 to $40 of his own money; that he had been drinking with his wife but they had an argument and she left him. He said that he was talking with a girl at the Charlie Brown tavern when a man came over and insulted her. He argued with the stranger and they went outside to continue their dispute. Another man came out of the tavern and took the stranger's side. Confronted with these odds, Lagios made a speedy departure down the nearby alley. He said he ran up to a policeman and asked for help but the policeman told him to fight his own battles, upon which advice he went back to get some other help and as he was returning he saw three fellows chasing him. The next thing he knew he was arrested.

Lagios' wife testified that on the night of her husband's arrest she had given him $290 to purchase a car. She also corroborated his testimony that they had been drinking at a tavern, had an argument and parted.

Another witness, John Barnes, testified that he knew the defendant and that he saw him in Charlie

Brown's tavern on the night of the robbery. According to Barnes, Lagios was standing beside a man and a woman and was arguing with the man. The man hit Lagios and Lagios ran out of the tavern.

Miho testified that at the time of the robbery he had in his pocket one $100 bill, two $50 bills, and the remainder in twenties and tens. However, it is apparent from his testimony that he was not sure of the exact denominations of the bills he carried. It can also be inferred that he had some singles, since he testified that while he was at the tavern he cashed a five dollar bill to purchase two 40-cent drinks. According to the arresting officer the defendant had, when searched, two $50 bills but no $100 bill. The defendant testified that he was carrying two fifties, two twenties, some tens, fives and singles; he did not have a $100 bill. His wife testified that she had given him two fifties, some twenties and tens, but no $100 bill. The defendant contends that the discrepancy about the $100 bill, plus the variance in the amount taken from Miho and found upon the defendant, raise a reasonable doubt as to his guilt.

The offense of robbery is the use of force and intimidation in the taking of property from the person or presence of another. Ill Rev Stats 1961, c 38, § 18-1. The value of the property taken is immaterial and its precise identification is unnecessary if the character of the property is such that exact identification is difficult. People v. Carpenter, 315 Ill 87, 145 NE 664. This is particularly true of money which, in most instances, cannot be positively identified unless it bears some peculiar mark or designation not common to all currency. People v. Rembowicz, 335 Ill 604, 167 NE 797. In the present case the amount of the money and the denominations of the bills found in the defendant's possession closely corresponded with what was taken from the complaining witness. In addition the complaining witness testified that the defendant

443

assaulted him and took his money from his pocket. Two eyewitnesses, who were attracted by the fight and who approached within a few feet of it, saw the defendant put his hand in the victim's pocket and tear the pocket. This was sufficient to establish the elements of the crime of robbery. Certainly, in view of the defendant's identification by three witnesses and his flight and capture, the minor variations in the amount and denominations of the currency are not sufficient to raise a reasonable doubt as to his guilt.

██ The defendant filed a post-trial petition in the nature of a writ of error coram nobis under section 72 of the Civil Practice Act. Ill Rev Stats 1961, ch 110, § 72. The purpose of the petition was to bring to the court's attention additional evidence as to the discrepancies in the denominations of the money, and to introduce evidence that Miho was not paid by his employer on the night of the robbery. Since the issue as to the denomination of the money was before the court in the trial, the petition did not present anything new in this regard and, as concluded above, was of minimal importance. The petition contained an affidavit of the manager of Don the Beachcomber, taken four months after the judgment, stating that Miho was regularly paid on Tuesday and that he had not been paid on July 30, 1962 (Monday); that he received his salary of $60 per week in check form; that if he received any money in cash it would be a salary advance and would not exceed $20. The petition was dismissed by the court and no point is made of the dismissal. Such evidence is not properly before this court. People v. Twitty, 405 Ill 60, 89 NE2d 827. If it were, it would make little difference at this time. It is not too clear to us after reviewing Miho's testimony (he appears to have had a language difficulty) whether he said he received all the $285 from his employer on the night in question, or whether he meant

444

that he received some of it at that time and that he had the rest because he was starting his vacation the next day. Furthermore, the petition did not show that the evidence contained therein was not available to the defendant at the time of the trial or could not have been obtained at that time by the exercise of reasonable diligence. Such a petition is not intended to relieve a defendant of the consequences of his own negligence. People v. Lewis, 22 Ill2d 68, 174 NE2d 197.

Whether the petition is considered or not, it is the opinion of this court that Miho's testimony was not contradicted in any material respect and that all the evidence points to the defendant's guilt beyond a reasonable doubt. The judgment is affirmed.

Affirmed.

SCHWARTZ, P. J. and SULLIVAN, J., concur.