THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROBERT HOVANEC *et al.*, Defendants-Appellants.

First District (5th Division)    No. 77-1913

Opinion filed September 14, 1979.

Ralph Ruebner and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and John R. Roe, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Following a jury trial, defendants Hovanec and Timm were convicted of armed robbery. (Ill. Rev. Stat. 1975, ch. 38, par. 18—2.) Darrell Timm has since died and his appeal was dismissed by this court as moot. (*People v. Mazzone* (1978), 74 Ill. 2d 44, 383 N.E.2d 947.) We will therefore consider only the issues raised by Hovanec on appeal and refer to Timm only where necessary to dispose of Hovanec's contentions. Defendant Hovanec was sentenced to a term of 6 to 18 years. On appeal, defendant contends that: (1) the trial court erroneously refused to dismiss the information charging him with armed robbery; (2) he was denied his right to present a defense; (3) the return of certain physical evidence by the State violated his due process rights since it suppressed evidence material to the proof of his innocence; (4) the trial court erroneously denied a continuance so that defendant could obtain exculpatory evidence; (5) the trial court erroneously allowed defendant's prior conviction to be introduced for impeachment purposes; (6) the prosecutor made improper remarks in his closing argument; and (7) he was not proved guilty beyond a reasonable doubt. We affirm. The pertinent facts follow.

Steve Korwin, the victim, signed a complaint charging defendant and

Timm with taking $49, 167 cartons and 125 packages of cigarettes from him while armed with a knife. At the preliminary hearing on the complaint, the victim testified that on October 19, 1976, at about 3:45 a.m., he was sitting in a gas station known as Tony's Oasis located at 50th and California. A man he identified as defendant Hovanec walked into the station, hit the victim in the eye with his fist, and said, "I want all the money." He gave defendant about $40. After the defendant struck him, Korwin noticed that he had a "Small blade, knife" in his hand. At defendant's command, he closed his eyes and put his head down. He remained that way for 5 to 10 minutes. When he got up, defendant was gone. He noticed that cigarette packages were missing and that a storage room had been broken into.

On cross-examination the victim tesified that although it was dark outside and the room in which he was seated had no lights, there was enough light to see a face and its features because of a light in the washroom. He also stated that he did not know if defendant had a knife and that the object could have been a belt buckle. When defendant rubbed the object against his arm it felt sharp.

Chicago police officer Zuzich testified that on October 19, 1976, at about 3:50 a.m., he was on patrol in a marked squad car. He saw a vehicle without a city sticker heading in the opposite direction. He made a U-turn and stopped the car at 47th and Seeley. As he got out of the squad, he received a radio message that a robbery had just occurred at 50th and California and that the robber was a white male wearing a brown jacket, blue jeans and dark sunglasses. He noted that the passenger was wearing dark sunglasses and otherwise matched the description. He observed a large quantity of cigarettes in the back seat of the car. A search of defendant revealed a pocket knife. The two men were arrested and taken to the gas station. The cigarettes were inventoried and then returned to the victim.

The preliminary hearing judge found probable cause for robbery but not for armed robbery. He struck the word "armed" from the complaint and changed the statutory section allegedly violated to conform to his finding.

On November 30, 1976, the State's Attorney filed an information charging defendant with armed robbery. On March 8, 1977, defendant filed a motion to dismiss the armed robbery information for failure to have a court or grand jury return a finding of probable cause for armed robbery. Defendant also filed a motion to suppress evidence and quash the arrest and a motion to suppress the identification testimony of the victim. Defendant also filed a motion to bar the use of his prior conviction for aggravated battery for impeachment purposes. After a hearing, all motions were denied. On July 25, 1977, defendant moved to inspect the

packages of cigarettes but was told that they had been returned to the gas station, were not available, and would not be introduced at trial.

The following pertinent testimony was adduced at trial.

*For the State*

Steve Korwin, the victim, testified. On October 19, 1976, he was working at Tony's Oasis at about 3:45 a.m. There were lights on outside the building and in the garage area and another in the washroom area. He saw a person enter the building, walk up to him and hit him in the face with his fist. The assailant was white and wore a brown jacket, blue jeans, and sunglasses. He held a knife in his hand and demanded all the money. Korwin identified the knife at trial. He gave the assailant about $40 to $50, "a lot of singles and a ten." He was told to keep his head down, and while doing this, he heard a second person enter the office. The first person asked Korwin for keys to a storeroom but he did not have any. He heard a cracking sound from the storeroom area. He could hear the two people going back and forth between the storeroom and the door. The person who hit Korwin told him to wait 15 minutes before calling the police. While he was on the ground, one of the persons rubbed the knife against his right arm. He identified Hovanec as the person who hit him and told him to wait 15 minutes before calling the police. After the people left, he called the police, gave them a description, and told them the general direction in which the robbers left. He noticed that a lot of cigarettes were missing from the storeroom and from a cigarette box. The storeroom lock had been broken.

About 15 minutes later he saw defendant in the back of a police wagon at the gas station. Two men were in the back and Korwin recognized defendant. He then went to the police station where he recovered the cigarettes. He placed these cigarettes with the regular stock.

On cross-examination Korwin stated that he was not sure that the knife he had identified was the same knife that he had been threatened with because it was dark in the room. He also said that the object could have been a belt buckle. He did not have a long time to observe the defendant before the defendant came in and he thought he was just another customer. He was struck about 3 or 4 seconds after the man entered the room and was dazed by the blow. At the preliminary hearing, he estimated that $30 to $40 had been taken. On the day of the robbery, Korwin didn't know that cigarettes were kept in the storeroom. When he first gave the description to the police, he did not give any height or weight nor did he mention a mustache. He also did not use the word "sunglasses" to describe defendant's glasses. He never saw or heard a car and did not know what was taken from the storeroom.

After the police arrived, he heard over the police radio that two suspects had been apprehended and would be in a "paddy wagon." When the wagon arrived, an officer told him to look in the back. Defendant was the only person with dark hair in the wagon.

Chicago police officer Zuzich testified. At about 3:50 a.m. on October 19, 1976, while on patrol westbound on 47th Street, he noticed an eastbound vehicle without a city sticker. He made a U-turn on 47th Street and pursued the vehicle. He then observed that one of the taillights was out. The car turned right on Hoyne, then east down an alley to Seeley, then back to 47th Street to go east again. At no time while the car was off of 47th Street did it stop. When the car pulled onto 47th Street, the officer curbed the car. As he approached the car he noticed a box with about 30 cartons of cigarettes through the back window. As the men got out of the car, he noticed the passenger fit the description of a robbery suspect which had just been reported on the police radio. At trial he identified Hovanec as the passenger and Timm as the driver. His partner searched Hovanec and found a pocket knife which the officer identified. The two suspects were put in a squadrol and taken to the gas station. He asked an Officer Bednarkiewicz what had been taken in the robbery. A search of the car revealed 6 cases and about 125 loose packages of cigarettes. In a search of the car at the police station, police found $49 under the passenger's seat, one $10 bill and 39 singles. After inventorying the money and the cigarettes, the cigarettes were turned over to Steve Korwin.

On cross-examination Officer Zuzich testified that he returned the cigarettes to Korwin because of the amount of cigarettes and money involved. When defense counsel inquired whether a lineup should have been held for identification of defendant, the trial court sustained the prosecutor's objections and refused to allow questioning on this point. Officer Zuzich told the wagon to return to the station for a one-on-one showup. Although he made a report on the arrest, he failed to mention in the report or inventory sheet that he found the $49 under the seat of the car.

Chicago police officer Bednarkiewicz testified. On October 19, 1976, he was on patrol and received a call about 3:45 a.m. and went to the gas station at 50th and California. He spoke with the victim and received the following description of the assailant: white male, approximately 6 feet tall, 170 to 180 pounds, wearing dark sunglasses, a brown jacket, dark hair and a mustache. He relayed this description to Officer Zuzich. He was at the station when the paddy wagon arrived and saw the victim look into the back of the wagon.

On cross-examination Officer Bednarkiewicz testified that it took him 3 minutes to reach the gas station after he received the call on the radio. He talked to the victim for a minute or two before sending the message.

He did not recall whether the victim's nose was bleeding or not, and he did not administer first aid. The paddy wagon arrived about 15 minutes after he did. Officer Zuzich had asked that the first message be repeated.

## For the Defense

James Huff testified. He had known defendant Hovanec for 8 years and Timm for about 5 years. He was a good friend of Timm. In August 1976, he accompanied Timm to Hammond, Indiana, where Timm bought five or six cases of cigarettes, with approximately 30 cartons to each case. Timm later sold these over a bar in Chicago. Huff accompanied Timm to Indiana twice in September, traveling first to Gary, then to Cedar Lake, before returning to Gary where they bought cigarettes. On each trip Timm bought five or six cases of cigarettes and sold them in Chicago.

On cross-examination Huff testified that the trips were to Hammond and not to Gary. Timm paid "three something" a carton for the cigarettes and Huff bought cigarettes from him for $4 a carton. Huff did not buy cigarettes in Indiana when he was with Timm because he did not have money and does not borrow money. The witness admitted that he knew it was illegal to import cigarettes from Indiana to Illinois.

Darrell Timm testified. On the afternoon of October 18, 1976, he drove to Hammond, Indiana where he bought 180 cartons of cigarettes. He paid between $600 and $620 for the cigarettes and loaded them into his car. From there he went to Cedar Lake where he had lunch and then went to a lounge. He stayed at the lounge between 4 and 10 p.m. when he went to a friend's house. He remained there until about 10:45 p.m. He went to another bar where he stayed until about 1:45 a.m. While there, he had a few drinks with a young lady named Sharon, but he did not know her last name or telephone number. He left the bar about 1:45 a.m. and drove to a 24-hour restaurant located in Chicago at 47th and California, about 2½ blocks from Tony's Oasis. He arrived at about 3 a.m. He was finishing breakfast about 3:30 a.m. when defendant, whom Timm had known for about two months, asked for a ride home. He had two partially filled boxes of cigarettes in the front seat of his car, and in order to make room for defendant, he took 10 to 12 cartons from one box, opened them, and put the loose packs into the other box. He then placed this box into the back seat and covered them so they could not be seen. He placed the empty cartons in the empty box in the front seat. As he drove east on 47th Street, he turned south for one-half block on Hoyne, then east down an alley where he dumped the empty box. He then drove north on Seeley and when he reached 47th Street, a squad car put its lights on and he stopped. He and defendant were searched by two policemen. He was

handcuffed but was not told he was under arrest until he reached the police station. He did not tell the police that he had purchased the cigarettes in Indiana.

The defense sought a two-day continuance to interview a manager of Tony's Oasis since they suspected that the State might be withholding exculpatory evidence. The prosecution objected to the continuance and, following argument, it was denied. The defense then submitted a police inventory slip which was admitted into evidence and then rested.

Following closing arguments, the jury found both Hovanec and Timm guilty of armed robbery.

On August 12, 1977, defendant informed the court that he was filing a written motion for a new trial and that he had also subpoenaed the cigarette inventory records from the gas station but had not received a reply. The trial court stated that the grounds for a new trial were insufficiently alleged and denied the motion. Defendants were sentenced but the mittimus was stayed until defendant could make a motion for new trial based on new evidence. Notice of appeal was filed August 23, 1977. On September 19, 1977, defendant informed the trial court that a motion for new trial on the grounds of newly discovered evidence had been filed on September 16. The motion alleged that inventory records from the gas station indicated a loss of cigarettes valued at $230.74 from the armed robbery, far less than the value of the cigarettes found in Timm's car. The State objected to the motion on the grounds that more than 30 days had passed since defendant's motion for a new trial, and the trial court was without jurisdiction. The trial court deferred its ruling until September 26, 1977, when it ruled that it no longer had jurisdiction over the case.

OPINION

I.

Defendant contends that his prosecution by information and conviction for armed robbery after the preliminary hearing judge found probable cause for robbery alone is not authorized by statute (Ill. Rev. Stat. 1975, ch. 38, par. 111—2) and violates article I, section 7 of the Illinois Constitution of 1970 and the due process clause of the United States Constitution. (U. S. Const., amend. XIV.) The State argues that the filing of the information was authorized and did not violate defendant's constitutional rights.

Article I, section 7 of the Illinois Constitution of 1970 provides:

"No person shall be held to answer for a criminal offense unless on indictment of a grand jury, except in cases in which the punishment is by fine or by imprisonment other than in the penitentiary, in cases of impeachment, and in cases arising in the

militia when in actual service in time of war or public danger. The General Assembly by law may abolish the grand jury or further limit its use.

No person shall be held to answer for a crime punishable by death or by imprisonment in the penitentiary unless either the initial charge has been brought by indictment of a grand jury or the person has been given a prompt preliminary hearing to establish probable cause."

In 1975, section 111—2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 111—2) was amended to allow the prosecution of additional offenses by information once probable cause for an offense had been found at a preliminary hearing. That section provides in pertinent part:

"(a) All prosecutions of felonies shall be by information or by indictment. No prosecution may be pursued by information unless a preliminary hearing has been held or waived in accordance with Section 109—3 and at that hearing probable cause to believe the defendant committed an offense was found.

* * *

(e) Where the prosecution of a felony is by information or complaint after preliminary hearing, or after a waiver of preliminary hearing in accordance with paragraph (a) of this Section, such prosecution may be for all offenses, arising from the same transaction or conduct of a defendant even though the complaint or complaints filed at the preliminary hearing charged only one or some of the offenses arising from that transaction or conduct."

Section 111—2(e) was subsequently redesignated as section 111—2(f). Ill. Rev. Stat. 1978 Supp., ch. 38, par. 111—2(f).

In *People v. Redmond* (1977), 67 Ill. 2d 242, 367 N.E.2d 703, the Illinois Supreme Court upheld the constitutionality of section 111—2(e) against challenges under article I, section 7 of the Illinois Constitution of 1970 and due process clause of the United States Constitution. U. S. Const., amend. XIV.

Defendant agrees that section 111—2 as construed in *Redmond* allows a prosecutor to file additional charges by information after a judge in a preliminary hearing has found probable cause to believe that defendant has committed some offense. He argues that *Redmond* does not cover this case, since the prosecutor did not file an additional charge but the same charge for which the judge at the preliminary hearing had found no probable cause. He submits that by ignoring the judge's finding of no probable cause and proceeding against defendant on that charge by information, the State violated his constitutional rights.

The major premise of defendant's argument is that the judge made a finding of no probable cause for armed robbery at the preliminary hearing. A careful examination of the record of the preliminary hearing convinces us that no such finding was made by the court. The pertinent portions of the transcript of that hearing are as follows:

"THE COURT: Confine yourself to the issue of armed robbery versus robbery because I'm satisfied that there's a basis for a finding of probable cause for robbery as to both Defendants.

[Assistant State's Attorney]: Just briefly, the victim testified he saw a blade, that that blade was rubbed up against his arm. The officer testified that his partner found a knife on the Defendant Hovanec.

[Defense counsel]: Objection to that. That's speculation.

THE COURT: Overruled.

[Assistant State's Attorney]: We'd be asking for a finding on armed robbery, Your Honor.

THE COURT: Finding of probable cause, simple robbery, both Defendants.

\* \* \*

[Assistant State's Attorney]: We're asking to amend the Complaint, asking to strike the word, "armed" and striking "with a dangerous weapon."

THE COURT: Waive reswearing and reaffirmation?

[Defense counsel]: Yes.

(Which were all of the proceedings had in the above entitled cause.)"

The court found probable cause for robbery but made no finding as to the greater charge of armed robbery. The State amended the complaint to charge only robbery for which probable cause had been found. Since probable cause for an offense (robbery) had been found, the additional charge of armed robbery could be added by information. Ill. Rev. Stat. 1975, ch. 38, par. 111—2(e).

Contrary to defendant's contention, this procedure does not violate his due process rights under the United States Constitution or his rights under article I, section 7 of the Illinois Constitution. *People v. Redmond* (1977), 67 Ill. 2d 242, 367 N.E.2d 703, *cert. denied* (1978), 434 U.S. 1078, 55 L. Ed. 2d 785, 98 S. Ct. 1272.

■■■ Had the judge at the preliminary hearing made an express finding that no probable cause existed for the charge of armed robbery, the State could either seek a grand jury indictment for that crime (*People v. Kent* (1972), 54 Ill. 2d 161, 295 N.E.2d 710; *People v. Creque* (1978), 72 Ill. 2d 515, 382 N.E.2d 793), or, absent harassment, refile the armed robbery complaint and hold another preliminary hearing. (*People v. Overstreet*

(1978), 64 Ill. App. 3d 287, 381 N.E.2d 305.) The State should not be able to ignore an express finding of no probable cause for an offense made at a preliminary hearing and file an information charging the same offense. As noted in *People v. Redmond*, California has a constitutional provision (Cal. Const. 1879, art. I, sec. 14 (1974)) and a statute (Cal. Penal Code §739 (West 1970)) which are similar to the ones involved in the instant appeal. The Supreme Court of California has held that where a magistrate at a preliminary hearing makes an express finding that, as a matter of fact, no probable cause exists for a certain offense, that offense may not be included in an information subsequently filed by the prosecutor. (*Jones v. Superior Court* (1971), 4 Cal. 3d 660, 483 P.2d 1241, 94 Cal. Rptr. 289.) In that case the magistrate made express factual findings that he did not believe the complaining witness' testimony or that the crimes charged took place. The court quoted from *Parks v. Superior Court* (1952), 38 Cal. 2d 609, 613-14, 241 P.2d 521, 524, where it had earlier stated:

> "As indicated herein the district attorney might include a related offense although the magistrate concluded impliedly or otherwise that the evidence did not show probable cause that such offense had been committed."

This was explained in *Jones* as follows:

> "Although the district attorney may, under *Parks*, challenge the magistrate's ultimate finding that the evidence is legally insufficient to show that the charged offense or offenses occurred, that challenge must be made within the context of the magistrate's findings on the evidence." 4 Cal. 3d 660, 666, 483 P.2d 1241, 1244, 94 Cal. Rptr. 289, 292.

■■ In the instant case, the judge made no finding that probable cause for armed robbery did or did not exist. Moreover, the complaint was amended to allege only robbery in place of armed robbery. Since probable cause was found for the robbery charge, we conclude that the State properly charged the offense of armed robbery by information and did not violate defendant's rights.

## II.

Defendant contends that he was denied his right to present a defense since he was prevented from cross-examining Officer Zuzich concerning whether a showup identification rather than a lineup had been used, and from arguing to the jury that the weight of the identification was thereby affected.

During Officer Zuzich's cross-examination, the following exchange took place:

"[Defense counsel]: Q. Now, your job is to enforce the law, is that correct?

A. Correct.

Q. As part of that job, it is also your duty to protect the Constitutional rights of an accused in your custody, is it not?

A. Right.

Q. And your job is protecting that individual's rights, which goes far beyond just reading him his so-called Miranda warnings from a pre-printed card, doesn't it?

[Prosecutor]: Objection. I don't understand the materiality of these questions.

THE COURT: Sustained.

[Defense counsel]: I'm laying a foundation, Judge. It's preliminary.

THE COURT: Well, I don't—

[Defense counsel]: I'll rephrase it.

Q. Your job of protecting his rights go [sic] beyond just reading him Miranda warnings, does it not?

A. Yes.

[Prosecutor]: Objection.

THE COURT: What's the nature of the objection?

[Prosecutor]: It's not material.

[Defense counsel]: Judge, it's preliminary to foundation.

THE COURT: We can have a side bar.

(Whereupon, the following proceedings were had outside the presence and hearing of the jury, at a side bar.)

THE COURT: Just what is it you want to get into?

[Defense counsel]: I'm going to get into the fact they didn't protect his rights by not having a lineup.

[Prosecutor]: This question has been resolved at a motion to suppress.

THE COURT: Sustained.

[Defense counsel]: No. No.

THE COURT: The objection is made. The objection is sustained. You will not go into that.

(Whereupon, the following proceedings were had within the presence and hearing of the jury.)

[Defense counsel]: Q. Officer, did you tell the paddy wagon to go back to Tony's Oasis—

A. Yes.

Q. —so they could have a one on one showup?

A. Yes.

Q. You didn't do anything to see that there was a lineup, did you?

[Prosecutor]: Objection.

[Assistant Prosecutor]: Objection.

THE COURT: The objection is sustained. The jury is instructed to disregard it."

Also during defense counsel's closing argument, the following was said:

"[Defense counsel]: You know, it's an interesting thing, they had a one on one showup.

[Prosecutor]: Objection.

THE COURT: Sustained.

[Prosecutor]: They didn't have a one on one showup. There were two people in the back of the wagon.

THE COURT: Sustained.

[Defense counsel]: Excuse me. It's an interesting thing—Let's say this. There was no line up—

[Prosecutor]: Objection.

THE COURT: Sustained.

[Defense counsel]: I can argue the credibility of the identification.

THE COURT: The objections were made and sustained, Counsel.

[Defense counsel]: He was never given the opportunity to pick his assailant out of a crowd of people similar in description. Nor was he given the opportunity to pick out his assailant's voice. Could they not have had a few people say something—some of the words—

[Prosecutor]: Objection, your Honor.

THE COURT: Sustained."

Defense counsel then pursued another line of argument. Defendant now claims that by erroneously sustaining the prosecutor's objections the trial court prevented defense counsel from delving into the issue of the showup and its effect on the weight of the identification.

■ There is no requirement that an accused be placed in a lineup for identification purposes. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243; *People v. Crenshaw* (1959), 15 Ill. 2d 458, 155 N.E.2d 599; *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) Where the accused is not selected from a group, that fact does not render the identification incompetent, but affects its weight. (*Manson v. Brathwaite*; *People v. Crenshaw*; *People v. Carter* (1979), 73 Ill. App. 3d 406, 392 N.E.2d 188.) Defendant relies on *People v. Carter*, which also involved objections to defense counsel's closing argument which attempted to discredit the identification because of the procedure used. In rebuttal, the

prosecutor had argued, over sustained objections, that the court had ruled the identification procedure was proper. The appellate court reversed and remanded the cause for a new trial, deciding that:

> "By telling the jury, over and over again, in every possible way, that the court had already decided this now entangled issue, and decided that the identification procedure was unexceptionable, the prosecutor communicated to the jury that they ought not to consider seriously the inherent weaknesses of the identifications, but ought rather to accept them at face value, unquestioned. In fact, the jury could easily conclude that they had no legal choice but to do so. The State thereby denied the defendants any real trial, for the essence of a trial is that evidence is weighed." 73 Ill. App. 3d 406, 410, 392 N.E.2d 188, 191-92.

■■ ■ In the instant case, unlike *Carter*, it appears that the thrust of the defense questioning was directed at the legality of the procedure, *i.e.*, whether defendant's constitutional rights were protected. Since there is no right to a lineup, the questions and argument were irrelevant. When defense counsel simply stated that the victim was not permitted to pick his assailant from a group, no objection was made. However, when defense counsel stated that no lineup was held, taken in the context of his argument, it would suggest that a lineup should have been held. The court properly sustained the objection to this argument. Defense counsel then abandoned this line of questioning.

The scope and extent of cross-examination is within the trial court's discretion, and absent an abuse of discretion resulting in manifest prejudice to a defendant, a court of review will not interfere with the determination of the trial court. (*People v. Burris* (1971), 49 Ill. 2d 98, 273 N.E.2d 605.) The same can be said of closing arguments. (*People v. Smothers* (1973), 55 Ill. 2d 172, 302 N.E.2d 324.) Defendant was able to cross-examine the victim and both police officers about the details of the identification procedure. Defense counsel pointed out defendant was identified in the back of the paddy wagon and not at a lineup. The jury was sufficiently aware of any defects or unreliability of the identification to measure intelligently the weight of the identification testimony. Defense counsel was not improperly restricted in his cross-examination or closing argument, nor did defendant suffer any prejudice by the trial court's decisions.

### III.

Defendant contends that the State suppressed evidence material to the proof of his innocence and thereby violated his due process rights. (*Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.) Defendant's defense was that he had purchased the cigarettes, which by

law must bear tax stamps, in Indiana, and therefore the stamps actually on the packages would be material to his defense. He argues that by returning the cigarettes which had been recovered from him to the gas station, the State did not make available to him evidence which would conclusively establish his guilt or innocence. We do not agree.

██ █ The defense motion for discovery filed on December 6, 1976, included a request for:

> "A list of all physical property that the State intends to use at the time of trial, including:
>
> a) A list of all physical property in the possession of law enforcement officials."

There was no specific request made for the cigarettes and the defense motion must be considered a general request.

> "If there is a duty to respond to a general request of that kind ['all *Brady* material' or 'anything exculpatory'], it must derive from the obviously exculpatory character of certain evidence in the hands of the prosecutor." (*United States v. Agurs* (1976), 427 U. S. 97, 107, 49 L. Ed. 2d 342, 351, 96 S. Ct. 2392, 2399.)

In addition, for there to have been a violation of the right of due process, it must be shown that: (a) the evidence was suppressed by the prosecution after a request for it by the defendant; (b) the evidence was favorable to defendant; and (c) the evidence was material. (*Moore v. Illinois* (1972), 408 U.S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562; *People v. Nichols* (1976), 63 Ill. 2d 443, 349 N.E.2d 40.) The good or bad faith of the prosecution is not the relevant inquiry since the question is the materiality of the withheld evidence. (*United States v. Agurs.*) The test to be applied is:

> "The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." 427 U.S. 97, 112-13, 49 L. Ed. 2d 342, 354-55, 96 S. Ct. 2392, 2401-02.

██ We find that defendant has failed to demonstrate that his due process rights were violated for segeral reasons. First, defendant was aware of the alleged source of the cigarettes and the possibly exculpatory nature of the tax stamps. There would be nothing of an "obviously exculpable nature"

about the cigarettes unless one were aware of the alleged source. Since the State was not aware of defendant's alibi until much later, the prosecutor had no duty to produce the cigarettes in response to defendant's general request absent a showing that he was aware of their exculpatory nature. (*United States v. Agurs.*) The defense was in a better position to know of the exculpatory nature of the evidence but did not make a specific request for them or act to preserve the evidence.

■■ In a similar case, the Illinois Supreme Court has held that a defendant's failure to attempt to obtain specific evidence which he knew the prosecution possessed precluded him from raising the State's failure to provide that evidence on review. (*People v. Smith* (1970), 46 Ill. 2d 430, 263 N.E.2d 860, *cert. denied* (1971), 402 U.S. 1009, 29 L. Ed. 2d 431, 91 S. Ct. 2193.) A similar reasoning should apply with even more force here. On November 23, 1976, at the preliminary hearing on the original complaint, Officer Zuzich testified that after the cigarettes were recovered, they were inventoried and returned to the victim. Defendant was thus made aware that the State no longer had the cigarettes, evidence, which according to his version of the events, would conclusively establish his innocence. He made no demand for their production or recovery. As in the *Smith* case, he should not be able to take advantage of his inaction and contend that the State suppressed evidence favorable to him.

Additionally, since the cigarettes were immediately returned to the gas station, they were not in the hands of the prosecutor to produce for discovery. As stated in *People v. Berry* (1977), 54 Ill. App. 3d 647, 652, 370 N.E.2d 26, 29:

> "* * * In such a situation, 'where neither the prosecution nor its agents are in possession of such evidence, the prosecution may hardly be accused of suppressing it.' *People v. Gaitor* (1977), 49 Ill. App. 3d 449, 454, 364 N.E.2d 484, [487,] and authorities there cited."

Defendant has also failed to show that the evidence was favorable to him. No one knows what tax stamps were actually on the cigarettes since they were returned and were presumably sold. It is therefore impossible to determine if they created a reasonable doubt of defendant's guilt and were material to his defense. (*United States v. Agurs.*) Since the elements necessary to establish a due process violation have not been established, we conclude that the evidence was not wrongfully withheld.

■■ Finally, defendant contends that while it may have been difficult for the State to store 167 cartons of cigarettes until his trial, at least a representative sample should have been retained. In the absence of a specific request for their production, any obviously exculpatory nature, or any effort to preserve them by the defense, there was no duty to retain

any packs for trial. In view of the quantity and perishable nature of the cigarettes, the police acted reasonably in returning them. This did not amount to an unnecessary destruction of evidence which denied the opportunity for meaningful confrontation of the State's evidence. (See *People v. Taylor* (1977); 54 Ill. App. 3d 454, 369 N.E.2d 573.) Defendant's guilt was established by other evidence and reversal of his conviction is not required.

## IV.

Defendant next contends that the trial court erred in denying his motion for a continuance to enable him to obtain important exculpatory evidence. Defendant's counsel claimed he suspected that the State was withholding *Brady* information when the prosecution decided not to call a witness who had recently been added to the State's list of witnesses. At that point the State objected and the following discussion took place:

"[Counsel for defendant Hovanec]: I'm telling you what. Forget it. Just forget it. Let's go, and let's finish the case. That's all I have to say.

\* \* \*

I would make an offer of proof that if the People were called to testify, that it's—my indictations are that there may have been a loss, but that—but prior to that there is a surplus. Subsequent to any loss there is a surplus of cigarettes after the theft. If you want to give me time to find it out, okay. Let an innocent man go to jail—."

The judge then asked the basis of defendant's position and defendant's counsel stated that because of conversations he had with a person who takes the inventory at Tony's Oasis, he wanted to speak with a man he believed was a manager and partner, although he did not know this of his own knowledge. The following exchange took place:

"[Assistant State's Attorney]: Judge, that kind of information is supposition, and possibilities, and no names, I submit that the request is frivolous.

THE COURT: So basically of your own knowledge you are not even in a position to make an offer of proof?

[Defense counsel]: Basically, correct, yes."

The trial court suggested that the witness be subpoenaed. Defense counsel estimated that it would take two days to get the desired information. The trial court offered to continue the case until 9:30 a.m. the next day, so that the question could be investigated. Counsel for defendant refused to do so.

A motion for a continuance to procure a witness is addressed to the discretion of the trial court and is considered in the light of the diligence shown by the movant (Ill. Rev. Stat. 1975, ch. 38, par. 114—4(e)), and its

disposition will not be disturbed on appeal without a showing of a clear abuse of discretion. (*People v. Rivera* (1978), 64 Ill. App. 3d 49, 380 N.E.2d 1018; *People v. Clayborne* (1977), 47 Ill. App. 3d 202, 361 N.E.2d 1141.) "After trial has begun a reasonably brief continuance may be granted to either side in the interests of justice." (Ill. Rev. Stat. 1975, ch. 38, par. 114—4(f).) The granting or denial of a continuance is a matter to be determined under the particular facts and circumstances surrounding the request. (*People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230; *People v. Rivera*.) Based upon the facts of the instant case, the trial court's denial of the continuance was not an abuse of discretion.

In support of his motion, defense counsel stated that he was suspicious that the State was withholding *Brady* material. When the trial court asked if defense counsel was prepared to make an offer of proof, counsel responded that he was not. In the absence of the offer of proof, the trial court could not determine either the admissibility of the evidence or whether a continuance was warranted. (See *People v. Boyce* (1977), 51 Ill. App. 3d 549, 366 N.E.2d 914.) In addition, when defendant's diligence in procuring the evidence is considered, the court may have determined that the continuance should not be granted. The robbery occurred on October 19, 1976. Defendant was made aware at the preliminary hearing that the cigarettes had been returned to the gas station. The continuance was sought on July 26, 1977. Defendant had over eight months to prepare for trial. The station owner and employees were accessible to him and it would be reasonable for the defense to attempt to verify the exact loss of cigarettes before trial. The record does not reflect that any effort was made to acquire this information. Defense counsel also could have subpoenaed the witness to insure his presence at trial but apparently decided not to do so. Moreover, the trial court did offer the defense a continuance until the next morning so that he could personally verify the information. Defense counsel, rejected this offer, saying:

"I'm not going to do it, because I'm not an accountant.

Do you want to deny the motion and get on with the case?"

■■ In view of the late stage of the trial and the lack of an offer of proof, the trial court's offer to continue the case until the next morning was not unreasonable. By rejecting the offer, defense counsel exhibited a lack of diligence in procuring the witness and the trial court properly denied the motion for a continuance. (*People v. Polk* (1979), 70 Ill. App. 3d 903, 388 N.E.2d 864; *People v. Boyce*.) Finally, even if the inventory showed a discrepancy in the amount missing and the amount recovered, the evidence would not have affected the outcome of the case. In view of the other evidence presented by the State, defendant was proved guilty beyond a reasonable doubt.

The fact that the gas station partner was added to the State's list of

witnesses but was not called to testify would not be sufficient proof of the existence of exculpatory information. *People v. Lott* (1977), 66 Ill. 2d 290, 362 N.E.2d 312, relied on by defendant, is clearly distinguishable. There, the State called a surprise witness on rebuttal. The witness, a co-prisoner of the defendant, testified that the defendant had admitted to him and seven or eight other prisoners that he had committed the crime he was being tried for as well as several others. Although the defense had made a pretrial discovery motion for " 'the substances of any oral statements made by [defendant] and a list of witnesses to the making or acknowledgment of such statements' " (66 Ill. 2d 290, 298, 362 N.E.2d 312, 315), neither the witness nor the substance of the statement was revealed to the defense. The State justified the omissions by stating that it had learned of the witness only one hour before he testified. Defendant sought a continuance to ascertain who the other witnesses to admission were. The denial of the motion for a continuance to seek surrebuttal evidence to counter the highly incriminating surprise testimony was found to prejudice defendant's opportunity to adequately defend. The supreme court affirmed the order of the appellate court which reversed the conviction and remanded the cause for a new trial.

In the instant case the partner was not a surprise witness, but was equally available to both sides. The partner never testified, and no incriminating testimony was presented. In addition, the court offered a reasonable opportunity for defense counsel to interview the partner and suggested that he be subpoenaed, presumably so that any exculpatory evidence could be presented. In view of all the facts and circumstances before the court, the denial of defendant's request for a continuance was not improper.

## V.

■■ Defendant next contends that the trial court erroneously ruled that his prior conviction for aggravated battery was admissible for impea؎ment purposes and thereby prevented him from testifying in his own behalf and rebutting the victim's identification testimony. He argues that this ruling was an abuse of discretion as set forth in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, since the prejudicial effect of the admission substantially outweighed any probative value of the conviction. Relying on *People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058, he asserts that aggravated battery is a crime of force and is not at all probative of truth or veracity.

We do not accept defendant's argument. *Montgomery* adopted Rule 609 of the Committee of Practice and Procedure of the Judicial Conference of the United States as a guideline for impeachment by evidence of prior conviction. That rule provides in pertinent part:

"(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime, except on a plea of *nolo contendere,* is admissible but only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.

(b) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date."

The 10-year period was modified in *People v. Ray* (1973), 54 Ill. 2d 377, 297 N.E.2d 168, but does not affect the admissibility of defendant's conviction here. The aggravated battery conviction was within the 10-year limit and was a crime punishable by imprisonment in excess of one year. (Ill. Rev. Stat. 1975, ch. 38, pars. 12—4 and 1005—8—1.) It was therefore admissible for impeachment unless the judge determined that its probative value was substantially outweighed by the danger of unfair prejudice. Defendant suggests that this balancing test was never performed by the trial court, although *Montgomery* had been discussed in the hearing. Since the court was aware of *Montgomery* and its provisions, it must be assumed that the judge gave appropriate consideration to the relevant factors and they need not appear of record. *People v. Washington* (1973), 55 Ill. 2d 521, 304 N.E.2d 276.

■■ ■ Defendant maintains that even if the balancing test was performed, the ruling of the trial court was erroneous since aggravated battery is a crime of force and does not bear on honesty. He cites *People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058, as authority for his position. The rule stated in *Montgomery* places no such limitation upon use of felony convictions. The use of the disjunctive "or" in the proposed Rule 609 makes it clear that the question of dishonesty arises only in the case of misdemeanors. All felonies are subject matter for impeachment under the rule unless the trial judge excludes them because of the balancing test.

Defendant relies on the following language from *Wright*:

"Yet we cannot conceive of what there is about the crime of aggravated battery which is at all probative of the defendant's honesty and veracity as a witness." 51 Ill. App. 3d 461, 465, 366 N.E.2d 1058, 1062.

However, in *Wright*, the record showed that the trial court admitted the prior conviction to show his propensity to engage in violent crimes and

not to impeach his credibility, thereby abusing its discretion. Justice Reardon specially concurred and concluded only that the trial judge failed to engage in the balancing test. He went on to state that according to the rule in *Montgomery*, a felony is presumed to relate to honesty and veracity. Justice Kunce, in his dissenting opinion, agreed that any felony conviction is presumed to reflect on a defendant's truth and veracity. In his view the trial court did not abuse its discretion and he would have affirmed the decision below. Since only one justice felt that convictions of violent crimes were of "zero probative value" of honesty (51 Ill. App. 3d 461, 465, 366 N.E.2d 1058, 1062), *Wright* can hardly be considered authority for defendant's position. Furthermore, we feel that an aggravated battery conviction is proper for impeachment and probative of a defendant's credibility. In the instant case we find that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice and that the trial court did not abuse its discrimination in ruling that evidence of the conviction was admissible.

Finally, we reject defendant's argument that the trial court's ruling prevented him from testifying in his own defense. A similar argument was rejected in *People v. Ganter* (1977), 56 Ill. App. 3d 316, 371 N.E.2d 1072, where the court answered this contention in the following manner:

> "The mere fact that the defendant decided not to risk the possibility of prejudicial impeachment does not mean that the ruling was erroneous. If so, any time a defendant unsuccessfully moves prior to trial to suppress use of a prior conviction, the defendant on appeal would be able to defeat the trial judge's discretion, regardless of whether the ruling was legally correct, by arguing that it prevented him from testifying at trial." 56 Ill. App. 3d 316, 327, 371 N.E.2d 1072, 1080.

Defendant attempts to distinguish *Ganter* by stating that it did not involve a challenge to the underlying ruling on admissibility but was based solely on the fact that defendant was kept from the witness stand. Defendant argues that the erroneous ruling by the trial court presented him with a dilemma he should not have had to face, and by making him choose not to testify, denied him a fair trial. As has already been discussed the trial court's ruling was proper and therefore did not place an unfair burden on defendant. His decision not to testify was a question of trial strategy which may appear incorrect in hindsight. However, since there was no abuse of discretion on the trial court's part, this issue is without merit.

## VI.

Defendant contends that the prosecutor made excessive and improper comments in his closing arguments and erroneously instructed the jury on the law.

The first comment complained of was made during the prosecutor's closing argument and is as follows:

> "Well, consider this. You heard Darrell Timm testify on direct examination. His attorney said, "Did you, in fact, tell the police that you got those cigarettes in Indiana? Answer, no.
>
> All right. So, you are asking—the defendants are asking that the police be clairvoyant. They should have assumed that they got those cigarettes in Indiana.
>
> Now, why should they have assumed that—
>
> [Defense counsel]: Objection, your Honor. A side bar.
>
> THE COURT: You may continue, Counsel.
>
> [Prosecutor]: There is no reason to assume that, because Darrell didn't tell them that. In fact, the first time anybody ever heard the story about Indiana was yesterday."

Defendant claims that since the prosecutor had earlier prevented Timm from explaining his failure to tell the police about the cigarettes, the prosecutor should not be allowed to infer his own explanation of the facts. Secondly, defendant contends that by referring to both defendants, the prosecutor made an impermissible comment on Hovanec's post-arrest silence. *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. ██ Taken in the full context in which the argument was made, it is clear that the prosecutor was not attempting to use defendant's post-arrest silence as an admission of his guilt. The comment was made in response to defense counsel's query as to the reason none of the cigarettes had been retained for trial. The prosecutor was attempting to show that the State had no notice of the exculpatory nature of the evidence and had acted reasonably in returning them. In addition, the fact that Timm had not told the police about the cigarettes was brought out on direct examination by defense counsel. In such circumstances defendant cannot complain of comments made by the prosecutor when his counsel first brought up the subject. (*People v. Saulsbury* (1977), 55 Ill. App. 3d 663, 371 N.E.2d 165; see *People v. Hambrick* (1979), 68 Ill. App. 3d 447, 386 N.E.2d 455.) Since the comments were not improper, the reference to "defendants," arguably meant to include Hovanec, was not prejudicial to him.

Defendant next complains that the following remark of the prosecutor was improper:

> "[I]t was important to Steve Korwin to get these street thugs off the street. It should be important to you, too."

He submits that the error was compounded by the following remark and that the combination of the two comments prejudiced his case:

> "You have today, ladies and gentlemen, a golden opportunity to be able to go home, stand tall, like Steve Korwin did when he came in here, and say to your neighbors, you know, today I did my part,

maybe a small part, but I did what I could to put a stop to the crime in the streets."

Regarding the description of defendants as "street thugs," a prosecutor may reflect unfavorably upon an accused and indulge in invective in urging the fearless administration of the law, based upon the evidence and legitimate inferences drawn from it. (*People v. Murdock* (1972), 3 Ill. App. 3d 746, 279 N.E.2d 159; *People v. Hall* (1973), 11 Ill. App. 3d 670, 297 N.E.2d 377.) From the evidence presented at trial it was established that defendant committed the armed robbery charged. As stated in *People v. Murdock:*

> "Certainly a person who indulges in armed robbery is commonly regarded as a thug or bum and we cannot say that such comment transcended the bounds of legitimate argument." 3 Ill. App. 3d 746, 752, 279 N.E.2d 159,163.

■■ We agree that in this case the reference was a legitimate comment based upon the evidence and find that it did not needlessly prejudice defendant. *People v. Terrell* (1975), 62 Ill. 2d 60, 338 N.E.2d 383.

■■ The comments regarding the jurors' opportunity to put a stop to crime on the streets do not require reversal of defendant's conviction. Defense counsel's objection to the comment was promptly sustained and the court instructed the jury to disregard it. Under these circumstances any impropriety of the comments does not require reversal. (*People v. Daugherty* (1969), 43 Ill. 2d 251, 253 N.E.2d 389; *People v. Holmes* (1976), 41 Ill. App. 3d 956, 354 N.E.2d 611, *rev'd on other grounds* (1978), 69 Ill. 2d 507, 372 N.E.2d 656.) A similar argument was found to be " 'very mild, almost philosophical, comment about the consequences and results of crime.' " *People v. Hall* (1973), 11 Ill. App. 3d 670, 673, 297 N.E.2d 377, 379.

> "The State's Attorney, being responsible for law enforcement in the community, has a right in his arguments before a jury to dwell upon the evil results of a crime, to urge a fearless administration of the criminal law, and to comment on the conduct of the accused."
> *People v. Brown* (1959), 16 Ill. 2d 482, 487, 158 N.E.2d 579, 582.

In the instant case the prosecutor was earnestly carrying out his responsibility and his comments were not unduly prejudicial to defendant.

Defendant also complains that the prosecutor gave the jury an instruction of law when he remarked:

> "I think [defense counsel] told you that the police officers lied, Korwin is mistaken, everything was wrong. It's the old conspiracy defense.
>
> [Defense counsel]: Objection. There's been no mention of conspiracy, Judge.

THE COURT: You may continue.

[Prosecutor]: *You may find, if you accept that argument, you must find that there is, in fact, a conspiracy here.* Steve Korwin has conspired with Officer Bednarkiewicz, who has conspired with me who has conspired with my partner, to frame these two men. That is insulting to your intelligence, and I'm certain that you would disregard that comment." (Emphasis added.)

Defendant contends that the prosecutor "raised a hurdle in the path of the defense which the law of Illinois never put there, for it is elementary that the defense need not prove a conspiracy to find an acquittal." He cites *United States v. Vargas* (7th Cir. 1978), 583 F.2d 380, as support for his contention. In *Vargas* the prosecutor told the jury that to believe defendant's story, it must find that all five government agents were lying and that the alternative was a verdict of guilty. As the court noted, even if the jury believed all five agents, it could return a verdict of not guilty if it found the evidence of guilt was insufficient.

■■ In the instant case, in his closing argument, defense counsel suggested that Korwin's memory of the robbery had been refreshed after a meeting with the prosecutor, that the cigarettes had been returned because the State was aware of the weaknesses of their case, and that Officer Zuzich lied and falsified his case report to assist the prosecutor in securing a conviction. The import of this argument was that Korwin, Zuzich and the prosecutor manipulated the evidence and testimony to insure defendant's conviction. A defense attorney cannot provoke a reply to his own improper argument and then claim error. (*People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19.) The prosecutor's reference to a conspiracy was a characterization of defense counsel's closing argument, in which he suggested that the State's witnesses collaborated with the prosecutor. It did not amount to an instruction of law requiring the jury to find the conspiracy to acquit defendant. Unlike *Vargas*, the statement did not restrict the jury's decision, but would allow the jury to reject defense counsel's argument and still find that defendant's guilt had not been established beyond a reasonable doubt. We therefore conclude that none of the comments made in the prosecutor's closing arguments requires reversal of defendant's conviction.

## VII.

Defendant's final contention is that he was not proved guilty beyond a reasonable doubt. He argues that the State's failure to introduce any of the cigarettes taken or evidence of their amount, coupled with the fact that the inventory showed that more were recovered than were missing, creates a reasonable doubt of his guilt. In addition, he maintains that the victim's identification cannot cure the failings in the evidence since it was

tainted by the suggestive showup. Finally, he asserts that his explanation of the events was credible, especially since Timm admitted a crime, the cigarette smuggling. We disagree.

Armed robbery is the taking of property from the person or presence of another by the use of force or by threatening the imminent use of force while armed with a dangerous weapon. (Ill. Rev. Stat. 1975, ch. 38, pars. 18—1 and 18—2.) As was said long ago in *People v. Carpenter* (1924), 315 Ill. 87, 89, 145 N.E. 664, 664-65:

> "The gist of the offense of robbery is the force or intimidation and taking from the person of another, against his will, a thing belonging to him or in his custody. The property taken need not be accurately described, and its value is immaterial so long as it is shown to have a value. Except in an indictment for larceny or where the degree of the offense depends upon value, money need not be described, and the term itself, without any description, imports value."

■■ Evidence in the instant case showed that the victim was struck forcefully by a man armed with a pocket knife and that an uncertain amount of money and cigarettes were taken from his person or presence. The victim identified defendant as the man who committed the offense. There was evidence at trial to establish each element of the offense of armed robbery. Although Korwin was uncertain about the amount of money taken, he did know that it consisted of a $10 bill and the rest in singles. The $49 recovered from the car was within the range of estimates given by Korwin and was in the proper denominations. The discrepancy in the exact amount taken does not raise a reasonable doubt of guilt. *People v. Moore* (1968), 104 Ill. App. 2d 343, 244 N.E.2d 337; *People v. Lagios* (1964), 51 Ill. App. 2d 440, 201 N.E.2d 245.

■■ Nor does the failure of the State to introduce the cigarettes into evidence or to establish the exact amount recovered from Timm's car raise reasonable doubt of defendant's guilt. The item taken need not be introduced but can be established by the testimony of witnesses. (See *People v. Baer* (1974), 19 Ill. App. 3d 346, 311 N.E.2d 418.) The testimony of Officer Zuzich showed that approximately 180 cartons and 125 loose packages of cigarettes were recovered and inventoried. They were not available at trial because they had been returned to the gas station. It was a question of the credibility of Officer Zuzich whether cigarettes were actually recovered, and this was resolved against defendant. The alleged discrepancy between the amount of cigarettes recovered and reported missing by the inventory is not enough to raise a reasonable doubt of guilt in light of the other evidence presented at trial.

■■ Finally, the victim's identification of defendant was positive and credible and was reliable under the totality of the circumstances. (*People*

*v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) The victim observed defendant for three to four seconds in sufficient light to see defendant's facial features and recall a description of the clothing he wore. He immediately identified defendant when he was brought to the gas station. The testimony of one witness is sufficient to convict (*People v. Manion*) and when Korwin's identification is coupled with the circumstantial evidence in this case, it is clear that defendant's guilt was proved beyond a reasonable doubt. A reviewing court may not substitute its judgment for that of the trier of fact on questions of the weight of evidence or credibility of witnesses, and may not reverse a conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Manion.*) Since no such doubt is raised in this case, we will not reverse defendant's conviction of armed robbery.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.