THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSE FELIPE MARRON, Defendant-Appellant.

Second District   No. 85—0415

Opinion filed July 23, 1986.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Kenneth R. Boyle, of State's Attorneys Appellate Prosecutor, of Springfield, and William L. Browers and Marshall Stevens, both of State's Attorneys Appellate Prosecutor, of Elgin, for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

Defendant, Jose Marron, was charged with battery. When he rejected the State's offer for a plea agreement, the prosecutor charged him by information with aggravated battery (battery on a public way). Following a jury trial, defendant was convicted of the lesser included offense of battery. (Ill. Rev. Stat. 1985, ch. 38, par. 12—3(a)(2).) He was sentenced to periodic imprisonment (work release) for a term of 364 days and ordered to pay restitution in the amount of $95. Defendant appeals, contending (1) that he was not proved guilty beyond a reasonable doubt, (2) that his right to due process of law was violated because the prosecutor, without prior notice that he would do so, charged defendant with aggravated battery to punish him for exercis-

ing his constitutional right to trial, and that, as a sanction for that violation, his conviction should be reversed without a new trial, and (3) that the trial court erroneously denied his motion *in limine* which sought to preclude the State from introducing his prior conviction of aggravated battery to impeach his credibility in the event he testified in his own defense.

■ Before addressing these contentions, we must consider the effect of defendant's failure to make a motion for a new trial. Generally, the failure to make such a motion results in waiver of the issues sought to be raised on appeal. (*People v. Pugh* (1982), 106 Ill. App. 3d 901, 436 N.E.2d 737; *People v. Hammond* (1977), 48 Ill. App. 3d 707, 362 N.E.2d 1361.) In *People v. Friesland* (1985), 109 Ill. 2d 369, 374-75, 488 N.E.2d 261, our supreme court stated:

"Exceptions to this rule have been made with regard to the failure to prove a material allegation of an indictment [citation], or in those instances in which the allegation of error would not normally be expected to be included in the post-trial motion (such as an allegation of ineffective assistance of counsel) [citation], or if a reviewing court elects to take notice of plain errors affecting substantial rights pursuant to our Rule 615(a) (87 Ill. 2d R. 615(a)). [Citation.]"

The first exception stated in *Friesland* applies to defendant's argument that he was not proved guilty beyond a reasonable doubt, and, accordingly, we will review that issue. (But see *People v. Thiel* (1981), 102 Ill. App. 3d 28, 429 N.E.2d 565.) The only exception arguably applicable to the other issues raised by defendant is the plain-error exception of Rule 615(a), and we will discuss those issues in that context.

We first consider defendant's argument that he was not proved guilty beyond a reasonable doubt. At the jury trial four witnesses testified for the State: James Huffstatler, the complaining witness; Carol Huffstatler, his wife; Dr. Lloyd Koritz, an emergency-room physician who treated the complaining witness on the date in question; and Wayne Watson, a sergeant with the Rochelle police department.

James Huffstatler was 43 years old at the time of trial. He testified that on the evening of Friday, August 31, 1984, he and his wife were at the Silver Dollar bar in Rochelle. He had two or three beers while he was there. They left the bar at about 9:30 p.m., and James started walking his wife home. James and his wife were separated at the time, and she lived at the Delos Hotel, one block east of the bar. When they were passing in front of the house next door to the hotel, defendant, who was drinking beer on the front porch of the house

with George Herrera, called out to James and told him not to go onto the hotel property.

James testified that he knew defendant because both of them had at one time worked together at the hotel. James stated that at the time of the incident he no longer worked at the hotel, but defendant did. James said he had previously been instructed by the owner of the hotel, Larry Eikamp, not to enter the building.

After defendant called out to him, James replied that he was not going onto the property. He said he was just walking his wife home and then would return to town. Defendant told him he could not go, and defendant grabbed his right arm. At this time James was standing on the sidewalk in front of the house next door to the hotel. James testified he tried to "talk defendant out of it" and make him let go of his arm, but defendant would not. James then punched defendant in the face, and defendant fell backwards to the ground.

James testified that there was a pickup truck parked between the house and the sidewalk. The front of the truck was facing west and toward the house. The scuffle occurred in front of the truck, and when James punched defendant, the latter fell between the pickup truck and the house.

James testified that after defendant fell down, he reached into his pocket. James was worried that defendant was going to pull a knife, so he told his wife to go home, and he walked away. James walked one block west and then one block north. While walking north, he crossed some railroad tracks.

When James was in front of Frankie's Tap, he glanced back and saw defendant approaching him. Defendant had in his hand a dark-colored pocket knife with about about a 4-inch blade. James started backing up the sidewalk, and defendant lunged at him with the knife and cut him on the left cheek. James kept backing up, and an unidentified person approached from across the street and said to him, "I think you'd better leave, he's already cut you once." James then left. He went north about one-half block, cut east through an alley, and went back to the Delos Hotel where he got a handkerchief from his wife. James then went to the police station where he reported the incident to one of the officers.

On cross-examination James testified that defendant had gotten him and his wife fired from their jobs at the hotel. James said he was fired because he was not "doing the work right" for Eikamp. James was still unemployed at the time of trial, and he did not like defendant. James denied telling Eikamp that he saw other Hispanics in the area on the night in question, and that he was not sure that defend-

ant cut him.

James acknowledged that the pickup truck parked near the hotel had a lot of sharp edges on it, but he said he did not cut himself on the truck.

James said he did not see the knife during the confrontation at the house next door to the hotel, and he denied telling the police that during that confrontation defendant pulled out a knife and swung it at him twice.

Finally, James testified that when defendant approached him with the knife outside of Frankie's Tap, he (James) saw no one else in the area. He acknowledged that there was a bar across the street from Frankie's Tap, and that sometimes on Friday nights that area was "pretty active."

Carol Huffstatler testified that James was not drunk on the night in question. She corroborated her husband's account of the confrontation next door to the Delos Hotel, including his testimony that defendant reached into his pocket after he was knocked down. She said that when he did so, she ran to the hotel and got Bill Schabacker. She and Bill returned to the scene, but no one was there. Carol testified that she looked west and saw defendant at the end of the block "fixing to turn the corner." Bill ran up toward him, but defendant rounded the corner, and Bill returned to the hotel. Carol also related how James returned to the hotel bleeding from his cheek, and how she gave him a handkerchief.

Dr. Koritz testified that the complaining witness came to the hospital a little after 10 p.m. He had a slightly curved laceration from the edge of his jaw up towards his mouth. It was about three-sixteenths of an inch deep at the bottom and thinned out at the top. Dr. Koritz cleaned the wound, and closed it with eight stitches. He testified that he thought it was a knife wound, but could not say that the complaining witness did not cut himself on the truck.

Officer Watson described how the complaining witness came to the police station holding a handkerchief to his bleeding jaw. Watson gave him some first aid, and James was later transported to the hospital. Watson said that Frankie's Tap was on Washington Street in Rochelle, which was a public street. The Rochelle police department had the responsibility to patrol that street, and the adjacent sidewalks, which were open to the public.

On cross-examination Watson said that at the police station, the complaining witness told him that during the incident next door to the hotel, defendant swung at him twice and missed before he hit defendant. The complaining witness also said that defendant pulled

out a knife during that incident. Watson testified that he did not know whether the railroad company owned property in the area of Washington Street. Finally, he testified that defendant was about 40 years old. Watson said that defendant was arrested about 10 minutes after the complaining witness arrived at the police station. Watson instructed the arresting officers to search defendant and the area where he was arrested for a knife, but they did not find one.

The defense presented two witnesses: Joseph Abigana, a resident of the Delos Hotel; and Larry Eikamp, its owner. Abigana testified only that defendant was arrested in front of the house next door to the hotel.

Eikamp testified that, in addition to being the owner of the Delos Hotel, he was employed by the Illinois Tollway. He said he knew all of the complaining witness' friends and acquaintances, and that he had a strong reputation for being untruthful. Eikamp stated that on the Saturday before trial the complaining witness told him "that this had gotten a little bit too far out of hand." James told him that he did not like having everybody in trouble, and "that he would like it just to all end." James said "that there were three other mexican people there at the time," and he (James) was not quite so sure that defendant was the one who cut him.

On cross-examination Eikamp stated that defendant worked for him, and he considered defendant a very good employee. Eikamp said that he would hate to lose defendant, and that he would like to help him "[i]f it's done in a proper way."

■■■ It was based on the evidence recounted above that the jury found defendant guilty of battery. Contrary to defendant's argument, we believe that it was sufficient to support the verdict. The trial of this case was essentially a question of the credibility of the witnesses. The testimony of the complaining witness and his wife, if believed by the jury, was sufficient to prove defendant's guilt. It is true, as defendant points out, that the complaining witness had a conceivable motive to testify falsely, *i.e.*, to punish defendant for getting him fired. It is also true that the testimony of Eikamp, if believed by the jury, would have required an acquittal. Eikamp, however, also had a conceivable motive to testify falsely, *i.e.*, to keep defendant in his employ. This type of conflict in the evidence is the customary grist for the jury mill, and it was the jury's prerogative to resolve the conflict in the manner it did. Generally, a reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses and will not reverse a criminal conviction unless the evidence is so improbable as to

raise a reasonable doubt of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) Defendant has also pointed out several inconsistencies in the testimony and statements of the complaining witness. For example, at trial he stated that during the confrontation next door to the hotel, he did not see defendant's knife, although he did see defendant reach into his pocket immediately before he (the complaining witness) left the scene. Officer Watson testified, however, that the complaining witness told him that defendant pulled out a knife during that incident. This is a minor inconsistency. In light of subsequent events, the obvious inference from defendant's conduct in reaching into his pocket was that he was pulling out his knife. That inconsistency merely indicates that the complaining witness made this inference prior to his conversation with Watson. Other inconsistencies cited by defendant concerning whether the complaining witness arrived at the Silver Dollar bar at 7:45 or 8:45 p.m., whether he had one or three beers, and other similar issues, are likewise not significant. Minor discrepancies in testimony do not render it unworthy of belief and affect only its weight. (*People v. Roper* (1983), 116 Ill. App. 3d 821, 452 N.E.2d 748.) In our judgment the testimony of the State's witnesses was neither improbable nor significantly impeached, and it was sufficient to support the verdict.

We next consider defendant's argument that his right to due process was violated because the prosecutor, without prior notice, charged him with aggravated battery to punish him for turning down an offer for a plea agreement on the charge of battery. Defendant acknowledges that he was not prejudiced by this alleged due process violation since the jury found him not guilty of aggravated battery, but he argues, relying primarily on language from *United States v. McCord* (D.C. Cir. 1974), 509 F.2d 334, *cert. denied* (1975), 421 U.S. 930, 44 L. Ed. 2d 87, 95 S. Ct. 1656, that his conviction should be reversed without a new trial notwithstanding, in order to preserve the judicial process from the contamination of prosecutorial misconduct.

■ As we noted above, defendant has waived this issue by failing to make a motion for a new trial. We must decide, therefore, whether the matter is cognizable under Rule 615(a). Our supreme court recently reiterated that the plain-error rule does not operate in the nature of a general-savings clause preserving for review all errors affecting substantial rights. (*People v. Friesland* (1985), 109 Ill. 2d 369, 375, 488 N.E.2d 261.) It is a limited exception to the waiver rule to be applied, as a matter of grace, where the evidence is closely balanced, or there are errors on the record which deprived the accused

of substantial means of enjoying a fair and impartial trial. (See *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Errors may also be considered under this rule where they are so fundamental that they taint the integrity and reputation of the judicial process. See *People v. Baynes* (1981), 88 Ill. 2d 225, 430 N.E.2d 1070.

In our judgment none of these reasons for relaxing the waiver rule is applicable to this issue. While the evidence here was closely balanced, the error alleged did not affect the fact-finding process. It concerned the propriety of charging defendant with a certain offense. The closeness of the evidence does not, under these circumstances, justify relaxation of the waiver rule. Moreover, because defendant suffered no prejudice from the alleged error, for he was not convicted on the added charge of aggravated battery, it did not deprive him of substantial means of enjoying a fair and impartial trial. And any suggestion that a motivation for jury lenity, occasioned by the existence of both a greater and lesser charge, may have led to a guilty finding of battery would be purely speculative.

Defendant raises no claim of deceit by the prosecutor, and he and his counsel must be held accountable for having, before trial, full knowledge of the facts and circumstances underlying the subject occurrence. Also, it should be remembered that a defendant does not have a right, constitutional or statutory, to bargain for a plea of guilty. (*People v. Hampton* (1973), 14 Ill. App. 3d 427, 302 N.E.2d 691.) Nor do we consider that the prosecutor's conduct here, while of questionable propriety, tainted the integrity and reputation of the judicial process.

As stated in *Friesland,* the waiver rule serves a salutary purpose. Requiring the defendant's written motion for a new trial to specify the errors complained of may save the delay and expense inherent in an appeal in those instances where the motion is meritorious. Additionally, it focuses the attention of the trial judge upon those aspects of the proceedings of which defendant complains, and gives to the reviewing court the benefit of the judgment and observations of the trial court with reference thereto. (*People v. Friesland* (1985), 109 Ill. 2d 369, 376, 488 N.E.2d 261.) Accordingly, we decline to consider this issue further.

Defendant's final argument is that the trial court improperly denied his motion *in limine,* made prior to trial and renewed at the close of the State's case, which sought to preclude the State from introducing his prior conviction of aggravated battery to impeach his credibility in the event he testified in his own defense. As noted above, defendant also waived this argument by failing to make a mo-

tion for a new trial. Because this case is close factually, however, and because this alleged error involves the fact-finding process, we will consider the argument under Rule 615(a).

Defendant's argument in this regard has three parts. First, citing the opinion of Justice Craven in *People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058, he maintains that a witness' prior conviction of aggravated battery is not at all probative on the issue of his credibility. Defendant mistakenly asserts that the opinion of Justice Craven was that of the court. It was not. There were three separate opinions in *Wright,* and two of them, the specially concurring opinion of Justice Reardon and the dissenting opinion of Justice Kunce, support the view that a witness' prior conviction of any felony is relevant on the issue of his credibility. The latter view is consistent with our supreme court's landmark decision in *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, which permits impeachment with a prior conviction of a crime if it involved dishonesty or false statement *or* if it was punishable by death or imprisonment in excess of one year. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 516, 268 N.E.2d 695.) The latter view is also the one which has been adopted by this court. (*People v. Hovanec* (1979), 76 Ill. App. 3d 401, 421-22, 394 N.E.2d 1340.) The reason that prior felony convictions of crimes that are not based on dishonesty or false statement are relevant to credibility is that they establish a disposition on the part of the witness to place the advancement of his individual self-interest ahead of the interest of society, and they may suggest a willingness to do so again on the witness stand. (*People v. Kitchen* (1977), 53 Ill. App. 3d 521, 368 N.E.2d 528.) Defendant's prior conviction of aggravated battery would have been relevant to the issue of his credibility had he testified.

The rule adopted by our supreme court in *Montgomery* provides that impeachment by prior conviction is to be controlled by the sound discretion of the trial judge. The rule provides that the judge should exclude a prior conviction if he determines that its probative value on the issue of credibility is substantially outweighed by the danger of unfair prejudice. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 516, 268 N.E.2d 695.) The second part of defendant's argument here is that the trial court, "although aware that it should balance the alternatives, never did so for the record." Defendant cites no authority, however, to the effect that the court was required to do so. In fact, the rule is to the contrary. Here the court was aware of and cited the *Montgomery* decision. As stated in *Hovanec,* "Since the court was aware of *Montgomery* and its provisions, it must be assumed that the judge gave appropriate consideration to the relevant factors and they

need not appear of record." *People v. Hovanec* (1979), 76 Ill. App. 3d 401, 421, 394 N.E.2d 1340.

■ Finally, defendant argues that the trial judge abused his discretion in determining that the probative value of the prior conviction was not substantially outweighed by the danger of unfair prejudice. In this regard he notes that the prior conviction was of the same offense for which he was on trial. This factor increases the danger of unfair prejudice because it increases the likelihood that the jury will improperly conclude, contrary to the instructions of the court, that the defendant is guilty because he has a propensity to commit that particular offense. (See *People v. Ellison* (1984), 123 Ill. App. 3d 615, 631, 463 N.E.2d 175.) Defendant also points out that between six and seven years had passed since his release from the penitentiary in connection with the prior conviction, and that during that time he had not been convicted of any crime. Our supreme court has stated that the nearness or remoteness in time of the conviction to the present trial, and the subsequent career of the witness are factors the trial judge should take into account. (*People v. Spates* (1979), 77 Ill. 2d 193, 205, 395 N.E.2d 563.) While these factors may weigh in defendant's favor, however, they are not necessarily controlling. In this case if the defendant had testified, the jury's decision would have depended in large measure on its assessment of his credibility as against that of the complaining witness and his wife. The more important a witness' credibility is to the determination of the truth, the more compelling is the argument against exclusion of the impeachment. (See *People v. Medreno* (1981), 99 Ill. App. 3d 449, 425 N.E.2d 588.) Balancing these factors pursuant to *Montgomery,* we cannot conclude that the trial judge abused his discretion here. See *People v. Singletary* (1979), 73 Ill. App. 3d 239, 391 N.E.2d 440 (court approved of impeachment of defendant, charged with aggravated battery and murder, with prior conviction of aggravated battery committed within 10 years of the offense for which defendant was on trial).

For the foregoing reasons, the judgment of the circuit court of Ogle County is affirmed.

Affirmed.

HOPF and LINDBERG, JJ., concur.