THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WARNER WALKER, Defendant-Appellant.

First District (5th Division)   No. 85—2523

Opinion filed June 5, 1987.

Steven Clark and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gaines, Jr., Paula Carstensen, and Marguerite Quinn, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Following a jury trial, defendant, Warner Walker, was found guilty of attempted murder, aggravated battery, and armed violence. Judgment was entered on the attempted murder conviction and defendant was sentenced to serve a term of 25 years.

On appeal, defendant contends that the trial court erred in barring him from impeaching the complaining witness with evidence of his prior convictions, in denying the jury's request to review a transcript of the complaining witness' testimony and in precluding defense counsel from arguing that another witness was a drug dealer; that the prosecutors improperly vouched for the credibility of the State's witnesses; and that he was not proved guilty beyond a reasonable doubt.

At approximately 5:30 p.m. on December 5, 1984, the complaining witness, Laneer Winder, and his friend, Richard Bynum, were sitting in Winder's automobile in the 1600 block of South Central Park Avenue in Chicago when they were approached by defendant, Warner Walker, and his codefendant, Freddie Stone, who asked if they could buy some marijuana. Winder and Bynum did not know either Walker or Stone. Winder said no, and Bynum told them to leave. After a brief argument Walker and Stone left and walked into a nearby gangway.

Sometime between 5:30 and 6 p.m., Winder and Bynum saw Walker and Stone ride past Winder's vehicle in a blue Thunderbird driven by a man Winder knew only as Melvin "T-Bone." When the car stopped, Walker and Stone got out and approached Winder's vehicle on the driver's side, where Winder was sitting. Walker produced a gun, pointed it at Winder's head and ordered him to open the door. Bynum jumped out of the car and ran away. Winder told Walker that the door was jammed and could not be opened. Winder offered to give his money to Walker but Walker refused, threatening to shoot Winder if he did not open the door. While Winder was struggling with the door, he

tried to grab the pistol from Walker, who shot him once in the left clavicle, temporarily paralyzing his chest and legs.

Bynum, who was several houses away from the scene of the shooting, heard a loud noise, turned around and saw sparks from Walker's gun. He saw both Walker and Stone run through a gangway. Bynum returned to the vehicle and saw that Winder was covered in blood. Winder told Bynum, "This punk just shot me." Bynum then obtained emergency medical care for Winder and assisted Officer John Lucki in searching for Walker, who was arrested on the street at approximately 6:45 p.m. in an area near the shooting.

Winder thought that he had identified Walker at the scene of the shooting but he was not sure because he was "drowsy." Officer Lucki, however, testified that Winder had been taken to the hospital before Walker was apprehended. Lucki testified further that Winder, who appeared to be in severe pain and was barely coherent, could not identify Walker or answer questions. The record does not clearly indicate whether Winder identified Stone at the scene or at the hospital. Winder and Bynum identified Walker and Stone at trial.

On cross-examination, Winder testified that he had told the police that the man who shot him was wearing a denim jacket and had been riding in a blue Thunderbird driven by Melvin "T-Bone." Bynum, however, testified that the shooter was wearing a long coat. At the time of his arrest, defendant was wearing two jackets. Officer Lucki testified that neither Winder nor Bynum had mentioned the Thunderbird or "T-Bone." Winder estimated that the sun was setting and it was not yet dark when he was shot shortly after 5:30 p.m. on December 5, 1984.

Bynum had been convicted of aggravated battery (a shooting), delivery of a controlled substance (heroin) and auto theft. He was in custody awaiting trial on two unrelated charges of delivery of a controlled substance (phencyclidine) and a hearing on a petition charging him with violating his felony probation. Three days before trial began, a prosecutor asked Bynum if he would testify against Walker. Bynum agreed and said that it "never entered [his] mind" to ask for leniency on the pending cases. He denied receiving any promises or making any "deals" in exchange for his testimony. Bynum admitted using marijuana but denied that he had used any on the night of the offense. He also denied that he was a drug dealer or used heroin.

Walker presented an alibi defense through the testimony of his girlfriend's sister. Walker was convicted of attempted murder, aggravated battery, and armed violence. Stone, who elected to have his case tried by the court, was acquitted of all charges. This appeal follows.

OPINION

Defendant initially contends that the trial court erred in barring him from impeaching Laneer Winder with evidence of his prior convictions. Winder was convicted of misdemeanor theft in 1976 and possession of cannabis sativa in 1979 and 1983. The 1979 conviction was a felony, the 1983 conviction apparently was a misdemeanor. The court granted the State's motion *in limine* to bar either defendant or his codefendant from impeaching Winder with any of these convictions. The court found that the theft conviction was too remote, that the felony possession conviction related only to Winder's personal habits and that the misdemeanor possession conviction was inadmissible.[1] With respect to the first two convictions, the court specifically found that the danger of unfair prejudice outweighed the probative value of the evidence. We disagree.

In *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, our supreme court adopted Rule 609 of the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States as a guideline for impeachment by evidence of a prior conviction. That rule provided in pertinent part that for the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible, but only if the crime was punishable by death or imprisonment in excess of one year or involved dishonesty or false statement regardless of punishment, unless, in either case, the judge determines that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. 51 F.R.D. 391 (1971).[2]

■ In making this determination, the trial court must consider the nature of the crime, the nearness or remoteness in time of the conviction to the present trial, the subsequent career of the person, and whether the crime was similar to the one charged. *People v. Montgomery* (1971), 47 Ill. 2d 510, 518, 268 N.E.2d 695; *People v. Spates* (1979), 77 Ill. 2d 193, 205, 395 N.E.2d 563.

■ A conviction for theft, of whatever type, involves dishonesty and is admissible to impeach the credibility of a witness. (*People v. Spates* (1979), 77 Ill. 2d 193, 201-04, 395 N.E.2d 563.) Illinois courts consistently have determined that a conviction for the unlawful possession or delivery of controlled substances would be the type of conviction which would be probative of credibility and would afford a basis

---

[1]Defendant does not question the court's ruling that a misdemeanor possession of cannabis conviction is not admissible for impeachment purposes.

[2]Under the rule adopted by the court, evidence of a prior conviction is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from confinement, whichever date is later.

for impeaching credibility. (See *People v. Tribett* (1981), 98 Ill. App. 3d 663, 675-76, 424 N.E.2d 688 (and the cases cited therein).) One court noted that "it appears reasonable to assume that an individual who obtains such substances does so by dishonest and evasive means, since their possession was in violation of the law." (*People v. Ramey* (1979), 70 Ill. App. 3d 327, 332, 388 N.E.2d 196.) Moreover, under the rule adopted by the supreme court in *Montgomery*, any felony conviction is presumed to relate to testimonial deceit and also is admissible. (*People v. Spates* (1979), 77 Ill. 2d 193, 204, 395 N.E.2d 563; *People v. Medreno* (1981), 99 Ill. App. 3d 449, 453, 425 N.E.2d 588.)[3] In our judgment, Winder's prior convictions do relate to his veracity.

■ Although Winder's theft conviction was nine years old at the time of defendant's trial, the conviction was within the time limitations established by *Montgomery* and we do not believe that the other requirements of *Montgomery* would have been offended by introduction of his conviction. (See *People v. Nicks* (1974), 23 Ill. App. 3d 443, 452, 319 N.E.2d 524 (eight-year-old armed robbery conviction properly admitted).) More significantly, Winder's subsequent convictions for possession of cannabis in 1979 and 1983 strongly suggest that he was not rehabilitated and that a potential for testimonial deceit remained. (See *People v. Johnson* (1981), 98 Ill. App. 3d 228, 233, 424 N.E.2d 610.) The fourth factor set forth in *Montgomery* is not applicable here.

*Montgomery* requires the court to balance the probative value of the evidence against the danger of unfair prejudice. In *People v. Jacobs* (1977), 51 Ill. App. 3d 455, 366 N.E.2d 1064, the court observed that "[w]hen a defendant is impeached by a prior crime, the greatest danger of unfair prejudice is that the jury may convict based on defendant's prior acts or a perceived propensity to commit crime and not solely on the basis of the proof in the case at hand." (51 Ill. App. 3d 455, 460, 366 N.E.2d 1064.) "The balancing of considerations must necessarily differ," the court continued, "when the witness to be impeached in a criminal trial is not the defendant." (51 Ill. App. 3d 455, 460, 366 N.E.2d 1064.) The witness is not on trial for any crime and the jury cannot use evidence of his prior conviction for any purpose other than that which is intended by the rule, *i.e.*, to question his credibility. (51 Ill. App. 3d 455, 460, 366 N.E.2d 1064. See also *People v. Smith* (1982), 105 Ill. App. 3d 84, 91, 433 N.E.2d 1054 (and the cases cited therein).)

---

[3]"The reason that prior felony convictions of crimes that are not based on dishonesty or false statement are relevant to credibility is that they establish a disposition on the part of the witness to place the advancement of his individual self-interest ahead of the interest of society, and they may suggest a willingness to do so again on the witness stand." *People v. Marron* (1986), 145 Ill. App. 3d 975, 983, 496 N.E.2d 297.

"At most, the introduction of the prior conviction would cause momentary embarrassment to the witness, and would not cause unfair prejudice." *People v. Warmack* (1979), 73 Ill. App. 3d 783, 792, 392 N.E.2d 334, *rev'd on other grounds* (1980), 83 Ill. 2d 112, 413 N.E.2d 1254.

■ Indeed, we have said that "it is difficult to conceive of a case in which the danger of unfair prejudice to the prosecution or its witnesses would substantially outweigh the probative value of evidence that such witnesses had been convicted of felonies or crimes involving dishonesty." *(People v. Rollins* (1982), 108 Ill. App. 3d 480, 491, 438 N.E.2d 1322.) The State has failed to explain how introduction of Winder's prior convictions would have prejudiced either the State or Winder. It is readily apparent that such evidence could have been considered by the jury only insofar as it related to Winder's credibility as a witness. In our judgment, exclusion of this evidence was reversible error.

The State's case was based on the testimony of the victim, Laneer Winder, and his friend, Richard Bynum. Bynum, however, did not actually witness the shooting. Moreover, he was impeached by his prior convictions and by the pendency of two felony charges and one violation of probation matter at the time of defendant's trial. In light of this substantial impeachment, the jury's evaluation of Winder's credibility may have been critical to its verdicts. Since we are unable to conclude that evidence of Winder's prior convictions might not have affected that evaluation, we cannot regard the error in excluding such evidence as harmless. Accordingly, defendant's convictions must be reversed and the cause remanded for a new trial. See *People v. Smith* (1982), 105 Ill. App. 3d 84, 90-92, 433 N.E.2d 1054; *People v. Warmack* (1979), 73 Ill. App. 3d 783, 789-92, 392 N.E.2d 334, *rev'd on other grounds* (1980), 83 Ill. 2d 112, 413 N.E.2d 1254; *People v. Thomas* (1978), 58 Ill. App. 3d 402, 404-06, 374 N.E.2d 743; *People v. Jacobs* (1977), 51 Ill. App. 3d 455, 459-60, 366 N.E.2d 1064.[4]

---

[4]Although more than 10 years have now elapsed since Winder's conviction for theft in 1976, we believe that it is our duty to assure that no advantage is taken of the error in excluding evidence of this conviction and that the parties be reinstated to all rights as if the error had not occurred. (See *People v. Warmack* (1979), 73 Ill. App. 3d 783, 792, 392 N.E.2d 394, *rev'd on other grounds* (1980), 83 Ill. 2d 112, 413 N.E.2d 1254.) The error is to be remedied by a new trial. Defendant at the former trial was erroneously deprived of the right to use such conviction for impeachment purposes. Accordingly, in the interest and furtherance of justice, if the prosecution presents the testimony of Laneer Winder on remand, the 1976 conviction shall be admissible for impeachment purposes, notwithstanding the time then elapsed. 73 Ill. App. 3d 783, 792, 392 N.E.2d 394.

In view of our disposition of defendant's first argument, we need consider only his last argument, that he was not proved guilty beyond a reasonable doubt.

Defendant argues that Winder's testimony was incredible because he failed to identify defendant prior to trial, he falsely claimed to have identified him at the scene and he stated that the sun had not yet set when he was shot sometime between 5:30 and 6 p.m. on December 5, 1984. We note, however, that Winder's failure to identify defendant at the hospital shortly after the shooting may have been attributable to his physical condition. Winder had been shot in the chest and was partially paralyzed. According to the arresting officer, who tried to interview him at the hospital, Winder appeared to be in severe pain and was barely coherent. The record is silent as to whether Winder identified defendant or a photograph of him at any time prior to trial. Winder testified that he thought that he had identified defendant at the scene but he was not sure because he was "drowsy." We do not believe that this mistaken belief or his statement regarding whether the sun had set destroyed his credibility as a witness.

■ Although there is substance to defendant's attack on Bynum's credibility, his testimony was essentially cumulative to that of Winder. Even in the absence of that testimony, there was sufficient evidence from which the jury reasonably could have concluded that defendant had shot Winder. See *People v. Braxton* (1980), 81 Ill. App. 3d 808, 815, 401 N.E.2d 1062.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

LORENZ and MURRAY, JJ., concur.