2020 IL App (1st) 170326-U

No. 1-17-0326

Order filed August 25, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 17887 |
| | ) | |
| LEONARD GORDON, | ) | Honorable |
| | ) | Evelyn B. Clay, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction for aggravated domestic battery over his contention that the trial court erred in allowing him to impeach the complaining witness with only one of her prior convictions.

¶ 2    Following a jury trial, defendant Leonard Gordon was convicted of aggravated domestic battery (720 ILCS 5/12-3.3(a) West 2016)) and sentenced to six years' imprisonment in connection

with an incident involving his mother, Senora Grant.[1] On appeal, defendant contends that the trial court erred when it allowed reference to only one of Grant's prior convictions for impeachment purposes. For the following reasons, we affirm.

¶ 3    Defendant was charged by information with eleven counts, including attempt first degree murder, armed robbery, residential burglary, two counts of aggravated domestic battery, robbery, four counts of aggravated battery, and unlawful use or possession of a weapon by a felon. Trial proceeded with respect to attempt first degree murder (count 1), armed robbery (count 2), and aggravated domestic battery (count 4).[2]

¶ 4    During a pretrial hearing on September 26, 2017, the State informed the court that it planned to call Grant to testify. Defense counsel informed the court that Grant had several prior convictions from Texas and requested "to use every single one of them" to impeach her.

¶ 5    The parties agreed that Grant had the following four prior convictions: a 2007 conviction for manufacture and delivery of a controlled substance; a 2007 conviction for prostitution; and two 2008 convictions for possession of a controlled substance. The court and counsel discussed whether the court would permit reference to any of those four convictions. The State acknowledged that "all four of those qualify under *Montgomery*" but argued that introducing all of them would be "prejudicial." Defense counsel told the court that "[t]he State did say that it would stipulate to [Grant's] convictions" and "they didn't give me any conditions." The State responded that it had

_____

[1] Grant is sometimes referred to in the record as "Senora Gordon" or "Senora Grant-Gordan." For consistency, we refer to her as "Grant."

[2] The record reflects that the jury received verdict forms with respect to only these three counts; the remaining counts were apparently nol-prossed.

agreed merely to stipulate that the convictions were in Grant's certified background, but had not agreed that all would be admitted at trial.

¶ 6    The following colloquy ensued:

"THE COURT: Well, the thing is drug use and drug addictions affects [sic] one's truthfulness sometimes, and it could very well go to that. I will allow the '07, delivery to come in.

[THE STATE]: That's a PCS [possession of controlled substance], I believe.

[DEFENSE COUNSEL]: No, it's a delivery.

THE COURT: I show it as a delivery. That's what I wrote down manufacturing according to the Illinois statutes it would be delivery.

[THE STATE]: It is.

THE COURT: Manufacture and delivery, so the '07 only. I don't think that I would want to dirty up anyone with a prostitution. Is there a felony there [in Texas]?

[DEFENSE COUNSEL]: Yes, your Honor.

THE COURT: It's a felony there.

[THE STATE]: But it's not here anymore.

[DEFENSE COUNSEL]: It doesn't matter.

[THE STATE]: I understand that, but the Judge is allowed to take this into consideration.

THE COURT: One of the drug cases it [sic] will be allowed. And I really don't think the prostitution is more probative in terms of the defense of the defendant than it is, so I think that would be, I'm going to allow that one."

¶ 7   Defense counsel noted its objection and maintained that "every single one of" the prior convictions should be admitted. The court stated that it "s[aw] no sense in allowing more than one" of the drug convictions, and that it would not allow reference to the prostitution conviction. The court again noted that it would allow "the delivery case to come in." Defense counsel then asked: "is there any way that this Court would allow a delivery and a possession, [Grant] has two." The court responded:

"I don't want to * * * take it to the point where this is a bad person analysis. You're trying to put it in for purposes of impeaching this person. I think the one conviction is adequate without going into all my gosh, this is oh, she has two, well, she has three drug convictions, and we can't believe anything she says. I don't want that to occur. I think it's, it would be a fair thing. I understand it's in her background, but I would like to be fair to both sides. * * * So I will allow the delivery to come in, one of the three drug cases, and no on the prostitution * * *."

¶ 8   Defense counsel again noted its objection and that "my understanding was that there would be an agreement, a stipulation to [Grant's] criminal background, no picking and choosing." The court remarked: "Even if you all had stipulated, * * * it's the Court's decision on weighing, balancing and weighing on the offered up evidence as to whether or not it comes in." The court additionally stated that "one drug conviction as to the victim is enough" and that "[m]ore than that

would be overkill." In confirming that it would not permit reference to the prostitution conviction, the court also remarked:

> "That has connotations of just a very low character, and I just think it's not, it's just not something for them to make objections. I think * * * prostitution and gangs and certain other evidence causes various reactions disturbing reactions, and I just think this would not be appropriate to put that in to impeach credibility."

¶ 9 At the beginning of proceedings the following day, September 27, 2016, defense counsel submitted a stipulation referencing one of Gordon's 2008 convictions for possession of a controlled substance, rather than delivery. The State remarked that the stipulation from defense counsel was "different from what the court had found what would be presented to the jury." The court responded: "That was brought up yesterday and [defense counsel] requested that it be changed from the delivery to the possession. * * * The one drug case that the court allowed, [defense counsel] requested that it be changed from delivery to possession and I allowed that." The State requested that the court "go back to its original ruling" to have the stipulation reflect a delivery conviction, but the court denied that request and ruled that the stipulation would reflect Grant's possession conviction.

¶ 10 At trial, Grant testified that defendant was her son. As of September 2014, Grant was living in an apartment with her boyfriend, David Johnson. Defendant formerly lived with Grant, but Grant had recently "put out" defendant from the apartment after an altercation between him and Johnson.

¶ 11 On September 16, 2014, Grant was expecting defendant to retrieve his possessions from the apartment, including two pet pythons. About 5:00 p.m., she heard a knock on her door and

recognized it as defendant's knock. She asked who was there, and the person said his name was "David." Grant told the person to "stop lying" because she knew it was defendant. Grant opened the door and asked defendant if he had come to get his snakes. Defendant locked the door behind him and began to strike Grant with his fists. When she tried to fight back, defendant picked up chairs and tried to hit her with them. Grant fell "after [defendant] hit [her] with the third chair." She got up and grabbed an iron to try to defend herself, but defendant pulled the cord, causing her to fall. Defendant began "stomping" her in the head with his foot. Grant attempted to call 911, but defendant took her phone away. He then kicked Grant as she begged him to stop. Defendant sat on her and told her that he wanted to kill her.

¶ 12 Defendant retrieved a knife from Grant's set of cooking knives and stabbed her repeatedly in the legs. She also sustained cuts on her right forearm, above her eye, and her ear. Grant told defendant that if he stopped, she would let him move back in to the apartment. However, that did not stop the attack. At one point, defendant demanded money, and Grant gave him money from her purse.

¶ 13 Eventually, defendant told Grant that he would help her, if she promised not to tell anyone about the attack. He then placed Grant in the bathtub and ran the water. Defendant used newspapers to try to "clean the blood up in the bathroom and the hall." The pair then walked outside, and defendant told Grant that he would kill her if she told anyone what he had done.

¶ 14 As Grant was walking with defendant, she heard her friend, Dana Givens. As Givens approached them, Grant turned to her and "said in a whisper voice that [defendant] was the one that did this to me." Givens walked with Grant and defendant to a nearby firehouse. Grant lost

consciousness; when she awoke, she saw an ambulance. She was taken to the emergency room at Stroger Hospital.

¶ 15    Grant identified photographs of wounds to her hand, right ear, legs, and above her left eye. She also identified photographs showing blood stains in her living room, bathroom, and hallway, as well as a photo of the knife. Grant testified that she was released from the hospital after a day, but that she required the assistance of a friend to clean her stab wounds for the next two months.

¶ 16    On cross-examination, Grant denied that she charged at defendant with a knife. She also denied that the altercation occurred because she was using drugs with Johnson. Grant acknowledged that, while living in Texas in 2008, she was convicted of possession of a controlled substance. She acknowledged her "drug addiction from the past" but testified that she had been "clean" for over ten years at the time of the attack.

¶ 17    Sean Griffin testified that he is a firefighter paramedic with the Chicago Fire Department. On September 16, 2014, he was at the fire station at 21 West 59th Street when he heard yelling outside. He saw two women and a male, whom he identified as defendant. Defendant yelled that his mother needed help. Griffin saw Grant fall in front of the firehouse. When Griffin and other firefighters approached, defendant became "aggressive" and left the scene shortly thereafter.

¶ 18    Griffin saw that Grant was holding a towel to her head; when he removed it, "it started bleeding profusely" and he noticed a significant wound on her head. Griffin and others loaded Grant into an ambulance and checked her vital signs. Griffin observed that her blood pressure was "lower than it should be," indicating blood loss. Griffin identified People's Exhibits 1 through 5 as accurate photographs of Grant's injuries.

¶ 19    Chicago Police Office Sylvester Mackey testified that when he arrested defendant on the afternoon of September 17, 2014, he did not notice any injuries to defendant. Mackey identified People's Exhibit No. 13 as a photograph of defendant on that date.

¶ 20    Evidence technician Patrick Doyle testified that on September 16, 2014, he went to Grant's apartment, where he saw blood on the living room and bathroom floor. He saw that the kitchen chairs were turned upside down on top of the kitchen table and found a knife on one of the chairs. That evening, Doyle took photographs of Grant's injuries at the hospital. Doyle identified photographs he had taken at Grant's apartment, as well as photographs of her injuries.

¶ 21    Defendant testified that on September 16, 2014, he went to his mother's residence to pick up his snakes. He knocked on the door and Grant let him in. He smelled drugs and saw Grant's boyfriend, Johnson, trying to stuff crack cocaine into a cigarette pack. Defendant and Johnson began to argue. Defendant questioned him as to why he had drugs there, since Johnson knew Grant was trying to stay "clean." Johnson "jumped up" and began to fight defendant. Grant then "jumped in" and "grabbed the iron." Defendant took the iron from her and hit Johnson with it. As defendant and Johnson continued to fight, Grant grabbed what looked like a "steak knife" and tried to stab defendant. Defendant grabbed the blade of the knife and cut his hand.

¶ 22    According to defendant, he stopped fighting Johnson after he saw blood on Grant. Johnson then "ran out the door." Defendant took Grant to the bathroom and tried to help her "patch it up." Because Grant did not stop bleeding, defendant walked her to the fire station to get help. After firemen arrived, defendant left the station. Defendant denied that he intended to kill Grant or that he took any money from her. He stated that he grabbed the blade of the knife to defend himself. Defendant acknowledged a 2011 forgery conviction.

¶ 23    On cross-examination, defendant admitted that he announced himself as "Dave" when he knocked on his mother's door. He testified that he did not know what happened to the knife after he took it from Grant. He acknowledged that he used newspapers to try to clean up Grant's blood, and that Givens walked with him and Grant to the fire station.

¶ 24    Following defendant's testimony, the defense introduced a stipulation that: "Senora Gordon has the following felony conviction. Possession of controlled substance; December 17, 2008."

¶ 25    The jury found defendant guilty of aggravated domestic battery. He was found not guilty of armed robbery and attempted first degree murder. Defendant filed a motion for new trial, which was denied. Defendant was sentenced to six years' imprisonment, to be followed by four years mandatory supervised release.

¶ 26    On appeal, defendant's sole contention is that the trial court erred when it permitted reference to only one of Grant's four prior convictions, for purposes of impeachment. That is, although the court permitted the jury to hear about a single 2008 conviction for possession of a controlled substance, defendant contends that the jury should have also learned of her 2007 conviction for manufacturing and delivery of a controlled substance, her 2007 prostitution conviction, and her second 2008 conviction for possession of a controlled substance. He asserts that the court did not properly weigh the probative value of these convictions against their prejudicial effect, as required by *People v. Montgomery*, 47 Ill. 2d 510 (1971), and that there was "no sound reason" to permit only one of the four convictions.

¶ 27    Defendant claims that he was prejudiced by the failure to admit the additional three convictions because it allowed the jury to find Grant "more credible than she actually was." He

claims that the remaining convictions were "highly probative." He suggests that had the jury been made aware of Grant's "pattern" of drug-related criminal activity, instead of only hearing about one conviction, it may have determined that Grant was a less credible witness.

¶ 28 In setting forth this argument, defendant recognizes that trial counsel did not adequately preserve this issue for review because it was not asserted in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988) (both a trial objection and a written posttrial motion are necessary to preserve an issue for review). Nonetheless, he urges that we review the issue under the plain-error doctrine, which "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved claims of error in specific circumstances." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Alternatively, he contends that trial counsel's failure to preserve the issue constitutes ineffective assistance of counsel.

¶ 29 The plain-error doctrine applies when " '(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *Id.* (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)). "The first step of plain-error review is determining whether any error occurred." *Thompson*, 238 Ill. 2d at 613; see also *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005) ("Before we may apply either prong of the plain error doctrine * * * there must be plain error.)" Thus, defendant must show that the trial court erred, *i.e.*, that it abused its discretion in admitting only one of Grant's four prior convictions.

¶ 30    The State responds that there was no error, and thus no plain error. The State contends that the trial court did not abuse its discretion in concluding that it would permit reference to only one of the four prior convictions. We agree with the State.

¶ 31    As recognized by the parties' briefs, our supreme court's decision in *People v. Montgomery*, 47 Ill. 2d 510 (1971) set forth the governing standard as to whether a witness' prior conviction may be admitted at trial for impeachment. As explained by our supreme court in *People v. Mullins*, 242 Ill. 2d 1 (2011):

>    "In *Montgomery*, this court held that evidence of a witness' prior conviction is admissible to attack the witness' credibility where: (1) the prior crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement regardless of the punishment; (2) less than 10 years has elapsed since the date of conviction of the prior crime or release of the witness from confinement, whichever is later; and (3) the probative value of admitting the prior conviction outweighs the danger of unfair prejudice. *Montgomery*, 47 Ill. 2d at 516. This last factor requires a trial judge to conduct a balancing test, weighing the prior conviction's probative value against its potential prejudice." *Mullins*, 242 Ill. 2d at 14.

¶ 32    In performing the requisite balancing test, "the trial court should consider, *inter alia*, the nature of the prior conviction, the nearness or remoteness of that crime to the present charge, the subsequent career of the person, the length of the witness' criminal record, and whether the crime was similar to the one charged. [Citation.]" *Id.* "If the trial court determines that the prejudice

substantially outweighs the probative value of admitting the evidence, then the evidence of the prior conviction must be excluded. *Id.* (citing *Montgomery*, 47 Ill. 2d at 518).

¶ 33    We note that "our supreme court has urged trial courts to avoid mechanically applying the *Montgomery* rule to admit all types of convictions, but it has not held that the trial court must explicitly discuss its consideration of the balancing test on the record. [Citations.] Absent an express indication that the trial court was unaware of its obligation to balance these factors, a reviewing court will assume that the trial court gave the factors appropriate consideration. [Citation.]" *People v. Neely*, 2013 IL App (1st) 120043, ¶ 19.

¶ 34    "The determination of whether a witness' prior conviction is admissible for purposes of impeachment is within the sound discretion of the trial court." *Mullins*, 242 Ill. 2d at 15 (citing *Montgomery*, 47 Ill. 2d at 517-18). Therefore, "[t]he trial court's decision as to the admissibility of a conviction for impeachment purposes will not be reversed absent an abuse of discretion. [Citation.]" *Neely*, 2013 IL App (1st) 120043, ¶ 19. " 'An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *People v. Patrick*, 233 Ill. 2d 62, 68 (2009) (quoting *People v. Hall*, 195 Ill. 2d 1, 20 (2000)).

¶ 35    In this case, the parties do not dispute that all four of the convictions at issue were punishable by imprisonment in excess of one year, and that each occurred within 10 years prior to defendant's trial. That is, defendant's claim of error comes down to whether the trial court adequately conducted the requisite balancing test when it determined that it would admit only one of Grant's prior drug convictions.

¶ 36    In this court, defendant does not suggest that the trial court was unaware of the governing standard but criticizes the court for "only cursorily discussing the *Montgomery* balancing test." Although a trial court need not explicitly state on the record that it is conducting the balancing test (see *Mullins*, 242 Ill. 2d at 16), the record shows that the court was cognizant of *Montgomery* and discussed the relevant "balancing and weighing" in determining that "[o]ne drug conviction as to the victim is enough." In turn, we presume that "the trial court gave the factors appropriate consideration." *Neely*, 2013 IL App (1st) 120043, ¶ 19.

¶ 37    After reviewing the record, we find that the court did not abuse its discretion in not admitting Grant's other convictions for purposes of impeachment. The record makes clear that the trial court was cognizant of *Montgomery* and exercised its discretion in determining that allowing reference to only one drug conviction was appropriate. The court's comments demonstrate that it determined that references to any additional convictions lacked significant probative value. Moreover, the court found that further references to drug convictions would be "overkill" and could suggest that Grant was a "bad person." We cannot say that this decision was unreasonable, or caused prejudice to the defense.[3] The trial court also reasonably concluded that Grant's prostitution conviction was even less relevant to the issue of her credibility, and could improperly suggest to the jury that Grant had "very low character."

¶ 38    We note our disagreement with defendant's suggestion that, because Grant was the State's witness and not a defendant, the trial court should not have considered any "prejudicial effect to Ms. Grant" in deciding whether to admit her prior convictions under the *Montgomery* analysis. We

---

[3] We note that Grant acknowledged in her trial testimony that she was a recovering drug addict. In light of that admission, it is even more difficult to see how defendant was prejudiced by the fact that the jury learned of "only" one of Grant's three drug-related convictions.

find no support for that proposition. We note that our supreme court has held that the *Montgomery* balancing test applies to determine whether a "*witness'* prior conviction is admissible to attack the *witness'* credibility," indicating that the balancing inquiry is not limited in application to defendants, but also applies to State's witnesses. *Mullins*, 242 Ill.2d at 14 (emphases added.); see also *People v. Calderon*, 369 Ill. App. 3d 221, 228-29 (2006) (affirming trial court's ruling admitting evidence of only one of State's witness' three prior felonies because "the prejudicial effect of allowing evidence of the other convictions would outweigh its probative value.").

¶ 39    Defendant nevertheless asserts that the balancing "necessarily differs when the witness to be impeached is not the defendant, because the witness is not on trial and the jury cannot use evidence of his prior conviction for any purpose," other than to cast doubt on credibility. He suggests that, other than Grant's potential embarrassment, there could be "no prejudicial effect" from admitting all four prior convictions, and so the court had "no sound reason" for limiting their admission. In making this argument, defendant relies chiefly on a 33-year old decision, *People v. Walker*, 157 Ill. App. 3d 133 (1987). However, we find *Walker* to be clearly distinguishable.

¶ 40    The defendant in *Walker* was charged in connection with the shooting of the State's complaining witness, Laneer Winder. *Id.* at 134. Before trial, the court granted the State's motion to bar defense counsel from impeaching Winder with his 1976 misdemeanor theft conviction, 1979 felony cannabis possession conviction, or 1983 misdemeanor cannabis possession conviction. *Id.* at 136. At trial, Winder testified that defendant shot him after an argument. *Id.* at 135. Defendant presented an alibi defense. *Id.* Defendant was convicted of attempted murder, aggravated battery and armed violence. *Id.*

¶ 41    On appeal, defendant contended that the court erred when it barred use of the 1976 misdemeanor theft or the 1979 felony cannabis conviction, both of which were within 10 years of the trial date.[4] *Id*. at 136. This court expressly disagreed with the trial court's determination that, for those two convictions, "the danger of unfair prejudice outweighed the probative value of the evidence." *Id.* Our court reasoned that the *Montgomery* balancing is different when the witness to be impeached by a prior crime is not the defendant:

> "*Montgomery* requires the court to balance the probative value of the evidence against the danger of unfair prejudice. In *People v. Jacobs* [51 Ill. App. 3d 455 (1977)], the court observed that '[w]hen a defendant is impeached by a prior crime, the greatest danger of unfair prejudice is that the jury may convict based on defendant's prior acts or a perceived propensity to commit crime and not solely on the basis of the proof in the case at hand.' [citation.] 'The balancing of considerations must necessarily differ,' the court continued, 'when the witness to be impeached is not the defendant.' [citation.] The witness is not on trial for any crime and the jury cannot use evidence of his prior conviction for any purpose other than that which is intended by the rule, *i.e.*, to question his credibility. [Citations.] 'At most, the introduction of the prior conviction would cause momentary embarrassment to the witness, and would not cause unfair prejudice.' [Citation.]
>
> Indeed, we have said that 'it is difficult to conceive of a case in which the danger of unfair prejudice to the prosecution or its witnesses would substantially

_____

[4] The *Walker* defendant did not challenge the ruling that the misdemeanor cannabis conviction was not admissible.

outweigh the probative value of evidence that such witnesses had been convicted of felonies or crimes involving dishonesty.' [Citation.]" *Walker*, 157 Ill. App. 3d at 137-38.

¶ 42 In *Walker*, our court found it "readily apparent" that evidence of Winder's prior convictions "could have been considered by the jury only insofar as it related to Winder's credibility as a witness" such that "exclusion of this evidence was reversible error." *Id.* at 138. We emphasized that, as Winder was the only witness who claimed to have seen the shooting, his "credibility may have been critical" to the jury's verdict. *Id.* We reasoned: "Since we are unable to conclude that evidence of Winder's prior convictions might not have affected that evaluation, we cannot regard the error in excluding such evidence as harmless." *Id.* On that basis, we reversed and remanded for a new trial. *Id.*

¶ 43 In this appeal, defendant suggests that *Walker* is "on point" and merits the same conclusion in his case. We recognize that *Walker* is similar, to the extent that it concerned the use of prior convictions to impeach a State's witness. Nevertheless, *Walker* is distinguishable. Significantly, in *Walker* the trial court barred reference to *any* of the witness' prior convictions, such that the jury had no inclination of any prior crimes that might bear on credibility. See *People v. Jones*, 169 Ill. App. 3d 883, 896-97 (1988) (finding *Walker* distinguishable "because there *all* prior convictions were excluded and, hence, the defendant there was denied the use of any impeachment tools." (Emphasis in original.)). In contrast, the court in this case permitted reference to one of Grant's drug possession convictions, recognizing that it could have some impact on the jury's assessment of credibility. Thus, the ruling in this case is not akin to *Walker*, where the jury did not hear about any of the complaining witness' prior crimes.

¶ 44    We further note that *Walker* did not indicate that it was applying the deferential "abuse of discretion" standard of review. That is, the decision in *Walker* did not state that trial court's ruling was unreasonable. Rather, the *Walker* court stated it simply "disagree[d]" with the trial court's determination that the "danger of unfair prejudice outweighed the probative value" of the prior convictions. *Walker*, 157 Ill. App.3d at 137. However, precedent since the 1987 *Walker* decision makes clear that the trial court's ruling as to admission of a prior conviction will not be reversed absent an abuse of discretion. See *People v. Atkinson*, 186 Ill.2d at 463 (1999); *Neely*, 2013 IL App (1st) 120043, ¶ 19.

¶ 45    In sum, the record in this case shows that the trial court engaged in balancing pursuant to *Montgomery*, before determining that reference to only one of Grant's prior drug convictions was appropriate. We cannot say that no reasonable person would agree with that conclusion. In turn, we find no abuse of discretion. As there was no error, we need not additionally discuss whether there was plain error. *Williams*, 2017 IL App (1st) 150795, ¶ 40 ("There was no error, let alone 'plain' error, and so we need not go further in the plain error analysis.").

¶ 46    Finally, we reject defendant's claim that his trial counsel was ineffective for failing to properly preserve a challenge to the ruling on Grant's prior convictions. Claims of ineffective assistance of counsel are subject to a two-prong test, in which a defendant "must prove that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense in that absent counsel's deficient performance there is a reasonable probability that the result of the proceeding would have been different." *People v. Evans*, 209 Ill.2d 194, 219-20 (2004) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). To prevail, a defendant must satisfy both the performance and prejudice prongs.

*Id.* If an ineffective assistance claim "can be disposed of on the ground that the defendant did not suffer prejudice, a court need not decide whether counsel's performance was constitutionally deficient. [Citations.]" *People v. Evans*, 186 Ill.2d 83, 94 (1999).

¶ 47    As discussed above, we have determined that the trial court did not abuse its discretion in permitting reference to only one of Grant's prior convictions. Therefore, defendant cannot demonstrate any reasonable probability that the result of the proceeding would have been different, even had his trial counsel properly preserved the issue in a posttrial motion. As defendant cannot demonstrate prejudice, his claim of ineffective assistance is without merit.

¶ 48    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 49    Affirmed.